## CHAMNESS et al. v. COLLOPY.

No. 11974—Opinion Filed May 15, 1923.

Rehearing Denied June 12, 1923.

(Syllabus.)

**Appeal and Error—Review of Equity Case.**

In all actions purely of equitable cognizance, it is the duty of the Supreme Court to consider the whole record, and weigh the evidence. and, when the judgment of the trial court is clearly against the weight of the evidence, render, or cause to be rendered, such judgment as the trial court should have rendered.

**2. Partnership—Fiduciary Relation of Partners.**

The relations of partners are confidential. They are trustees for each other, as to partnership property.

**3. Same—Rights and Liabilities of Partners.**

Each member of a partnership must account to it for everything that he receives

on account thereof, and is entitled to reimbursements therefrom for everything that he properly expends for the benefit thereof, and to be indemnified thereby for all losses and risks which he necessarily incurs on its behalf.

**4. Trusts—Fiduciary Relations — Acquiring Rights Antagonistic to Associate's Interest.**

Whenever one person is placed in such relation to another, by the act or consent of that other or the act of a third person or of the law, that he becomes interested for him, or interested with him. in any subject or property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated.

**5. Same—Partnership — Interests in Oil Lease—Judgment—Reversal.**

Record examined, and held, that the judgment of the trial court is clearly against the weight of the evidence; such judgment is reversed, and the cause remanded, with directions.

Error from District Court, Washington County; Preston A. Shinn, Judge.

Action by W. A. Chamness and others against J. W. Collopy to establish interest in oil lease. Judgment for defendant, and plaintiffs bring error. Reversed, and remanded, with directions.

Montgomery & Montgomery and Breckinridge, Bostick & Daniel, for plaintiffs in error.

F. G. Viger and Shipman & Lewis, for defendant in error.

JOHNSON, C. J. This is an appeal from the district court of Washington county.

The record discloses that on the 12th day of February, 1920, the plaintiff, W. A. Chamness, W. H. Reese, and James Morrison, commenced an action in the district court of Washington county against defendant, J. W. Collopy, to recover a judgment declaring and adjudging said J. W. Collopy to be a trustee of said plaintiffs, holding for them an undivided five-sixths interest in and to a one-half interest in a certain oil and gas lease upon the land described in the plaintiffs' petition, and that such interest be sold and the proceeds thereof divided in said proportions, and for an accounting, and for such other and further relief as to the court might seem right and proper.

The petition filed by the plaintiffs alleged, in substance, among other things, that during the month of November, 1919, the plaintiffs, together with the defendant, entered into a mutual, oral agreement, wherein and

whereby it was agreed by and between, said plaintiffs and said defendant that they would engage in leasing certain lands in the state of Oklahoma for oil and gas purposes, especially lands in Washington county, Okla.; that it was further agreed between said parties that said defendant would secure the leases and that all of his expenses in the way of railroad fare, hotel bills, and other personal expenses incurred by him in obtaining the said leases would be paid by said plaintiffs. and that the moneys to be paid for said leases were to he divided between said parties in the following proportions: One-half of the cost of said leases was to be paid by one of the plaintiffs, W. A. Chamness; one-sixth by the plaintiffs W. H. Reese and James Morrison, and the said defendant, J. W. Collopy, would pay one-sixth. And that the title to said leases, if any should be obtained, would be taken in the names of the plaintiffs and said defendant, in the following proportions: One-half interest to the said plaintiff W. A. Chamness; one-sixth interest each to the said plaintiffs W. H. Reese and James Morrison and the said defendant, J. W. Collopy.

It is further alleged in said petition that sometime during the latter part of November, 1919, these plaintiffs entered into negotiations with one G. T. Braden for the purpose of leasing certain lands belonging to the said G. T. Braden, located in Washington county, Okla., described in plaintiffs' petition as follows, to wit:

"Southeast quarter of southeast quarter, and southeast quarter of northeast quarter of southeast quarter, section 19, township 25 north, range 14 east, Washington county, Oklahoma."

That the said defendant, after learning that the said G. T. Braden owned said lands, and after learning that these plaintiffs had been carrying on negotiations with the said G. T. Braden for the leasing of said described lands, and without the notice and knowledge of the plaintiffs, or either of them, secured an oil and gas lease from the said G. T. Braden covering said described lands, a true and complete copy of said lease being attached to plaintiffs' petition and marked "Exhibit A" and made part thereof.

It is further alleged in plaintiffs' petition that the said defendant took said lease in his own name, and in doing so, acted in fraud of the rights of said plaintiffs, and that said lease should have been taken jointly in the name of said plaintiffs and said defendant in the proportion as hereinabove set out; and that thereafter, and to wit, on the 19th day of January, 1920, the said defendant, without the notice or knowledge of these plaintiffs, or either of them, assigned an undivided one-half interest therein to one J. A. Twitchell, and that the said J. A. Twitchell is now the owner of an undivided one-half interest in said lease. That the consideration for said lease was that the royalty should be one-sixth interest instead of the customary one-eighth and that a well should be commenced on said lease on or before January 10, 1920, and that no other consideration was to be paid for said lease by the said J. W. Collopy to the said Braden. That the plaintiffs and each of them had paid the expenses of the said Collopy in his efforts to procure other leases as well as this lease, and that they had paid the said defendant J. W. Collopy's expenses at different times since and before the 11th day of December, 1919; and that by reason of the partnership agreement between said plaintiff and said defendant, as above set forth, these plaintiffs are the owners of an equitable title in and to an undivided five-sixths of an undivided one-half interest in the aforesaid lease.

It is further alleged that these plaintiffs have demanded of said defendant an assignment to them of said interest of said lease, and said defendant has refused and now refuses to execute and deliver to these plaintiffs an assignment conveying to said plaintiffs an undivided five-sixths interest in the proportion as set forth in plaintiffs' petition; that the defendant should be compelled to execute and deliver to these plaintiffs an assignment covering their interest as above set out, or that said lease should be sold under an order of the court and the proceeds divided between said parties as alleged in said petition. That the said J. W. Twitchell has drilled a well upon said lease, and that the same is producing large quantities of oil, and that one-half of said oil belongs to these plaintiffs, and that said plaintiffs are entitled to an accounting from said defendant for one-fourth of the oil produced and saved from said lease.

The petition concludes with a prayer upon the part of the plaintiffs that they have and recover judgment, declaring and adjudging said J. W. Collopy to be a trustee for said plaintiffs, holding for them an undivided five-sixths interest in and to one-half of said lease, and that said defendant be required to execute and deliver an assignment to these plaintiffs in the proportion set out in plaintiffs' petition, and that said half interest be sold and the proceeds thereof be

uivided in said proportions, and for such other and further relief as to the court may seem right and proper.

To the petition of the plaintiffs, the defendant, on the 12th day of March, 1920, filed his answer, which, on the 4th day of May, 1920, was substituted by an amended answer. The substance of said amended answer is that the defendant denies that the plaintiffs and the defendant entered into any agreement as set forth in plaintiffs' petition, and that if the plaintiffs and defendant had attempted to make any such oral contract as alleged in plaintiffs' petition, the same would have been invalid and void under section 941 of the Revised Laws of the state of Oklahoma, 1910, and under the laws and statutes of this state governing the conveyance and sale of real estate, or interest therein.

The defendant further sets out in said answer that the plaintiffs knew within a very few days of the obtaining of the said G. T. Braden lease, referred to in plaintiffs' petition, and that they did not claim any ownership, right, title, or interest therein until this defendant had assigned an undivided one-half interest therein, and the said defendant and his codefendant had gone upon the lease and expended large sums of money in developing same for oil and gas, and thereby had proved said lease to be valuable; and, further, that before any operations had been begun on said premises, offered to negotiate and sell to some of these plaintiffs said lease or an interest therein, and that said plaintiffs stated in very emphatic terms that they did not desire said lease or any interest therein, and that by reason of the laches of the plaintiffs they should not be permitted at this time to assert any claim or interest in said property. The defendant, further answering, asserts that the plaintiffs had not offered to pay anything for the said property, or any part or proportion of the expense of proving or developing same, and denies all of the other allegations in plaintiffs' petition not admitted by the said answer, and asks for judgment on behalf of the defendant.

On the 5th day of May, 1920, the plaintiffs filed a reply in the form of a general denial to defendant's answer. The cause was tried to the court, and on the 5th day of May, 1920, after the evidence had been submitted and heard, and the argument of counsel had been held, the case was taken under advisement until the 26th day of July, 1920, at which time judgment was rendered in favor of the defendant. Thereafter, and on the 27th day of July, 1920, a motion for new trial was filed, setting forth the statutory grounds. The same was overruled and exceptions reserved, and an appeal prosecuted to this court.

The trial court made no findings of fact or conclusions of law, but rendered a general judgment in favor of the defendant and ordering that the plaintiffs take nothing by their action, and that their petition be dismissed at their cost. The plaintiffs filed a timely motion for new trial upon the usual grounds, which was overruled by the court.

The only property involved herein is an undivided one-half interest in the Braden lease, it being conceded that J. A. Twitchell took the other half by the assignment from the defendant, he being an innocent purchaser for value.

As we view the record, and briefs of counsel for the respective parties, the only question for our consideration is, "Was the judgment of the trial court clearly against the weight of the evidence?"

It is clear from the record that the plaintiffs based their cause of action upon the theory that the plaintiffs and defendant, by mutual agreement, entered into a partnership or joint venture for the purpose of procuring and operating an oil and gas mining lease upon lands situated near Oglesby, Washington county, Okla., and as a result of their joint efforts procured the lease in controversy, and one other known as the Cox lease, which they afterwards sold.

It appears from the evidence that W. H. Reese, one of the plaintiffs above named, had had a longer acquaintance with the defendant, J. W. Collopy, than any of the other plaintiffs; in fact, he had had previous business transactions with the defendant, J. W. Collopy, and up until the time of these negotiations the other two plaintiffs, that is to say, W. A. Chamness and James Morrison, did not know the defendant, J. W. Collopy, or only casually, if at all.

It is further shown in the testimony of W. H. Reese that the defendant, J. W. Collopy, had been absent from Tulsa, and that when he returned in November, 1919, the plaintiff W. H. Reese called him and first called his attention to the oil and gas lease in the vicinity of the Braden lease, and suggested to the defendant, J. W. Collopy, that "there was something pretty good for them there", and that the plaintiffs W. A. Chamness and James Morrison would go in with them in any leases that they might acquire; that the defendant, Collopy, assented to

this, and went to Oglesby, Okla., where these leases were located, in company with all of the plaintiffs above named, and there inspected the property upon which the plaintiffs were contemplating securing oil and gas mining leases, and that the defendant, J. W. Collopy, agreed that they should all participate in whatever oil and gas leases might be obtained under this arrangement.

It further appears from the testimony of the plaintiff W. H. Reese that it was agreed between the parties that the defendant, Collopy, would remain at the location of these leases and attempt to obtain them, and that all of the plaintiffs gave to J. W. Collopy all the money they had with them for expenses, which was $25. The defendant, J. W. Collopy, remained at Oglesby for a short time, and then returned to Tulsa, later returning to Bartlesville with plaintiff Chamness in his car, and discovered from the records that the G. T. Braden lease, which is the subject of this controversy, was owned in fee by G. T. Braden, of Tulsa, and that no oil and gas mining lease had been executed thereon, and that later, the defendant, Collopy, secured the G. T. Braden lease in his own name, and that he did not pay any bonus therefor, the only consideration for the lease being a royalty of one-sixth and an agreement to commence the drilling of a well by the 10th day of January, 1920. This information was first revealed to these plaintiffs in a conversation had between the plaintiff W. H. Reese and the defendant, J. W. Collopy, in the Tulsa Hotel. That testimony further shows that the defendant, J. W. Collopy, had represented to the plaintiffs that it would cost $2,000 to obtain the lease, or that he could get it for one-sixth royalty and $50 per acre.

The testimony of the plaintiff W. H. Reese further showed that he later discovered that the defendant, Collopy, had assigned to one J. A. Twitchell an undivided one-half interest in said lease, in which the said defendant, J. W. Collopy, was to be carried in two wells free of cost of development, and that immediately after this information had been obtained, the plaintiff W. H. Reese notified his coplaintiffs, W. A. Chamness and James Morrison. It further appears from the testimony of W. H. Reese that the defendant Collopy assented to the arrangement suggested by the plaintiffs as to the proportionate share that each was to have in the leases obtained under this arrangement.

The testimony of the plaintiff W. A. Chamness substantiates the contention of the plaintiffs in this case, and sets out in detail what the arrangement was between the parties, as to the interest that each should have in the leases acquired under this arrangement, and just what was to be done by each of the parties, as does also the testimony of the plaintiff James Morrison.

It will be seen from the testimony of the plaintiffs Chamness and Morrison that the first intimation they had that the defendant, Collopy, had procured the Braden lease was when they were informed of this fact by the plaintiff W. H. Reese, after his conversation with the defendant, Collopy, in the Tulsa Hotel, hereinabove referred to. All of the other conversations relating to this Braden lease were in the form of negotiations, or rather informal discussions, and the final statement by the defendant, Collopy, to this plaintiff that he could obtain the Braden lease for a bonus of one-sixth royalty and $50 per acre. The plaintiff Morrison in his testimony related what the interest of the various parties in these leases was to be; that is, that the plaintiff W. A. Chamness was to have an undivided one-half interest therein, and that the other one-half interest was to be taken in the name of the plaintiffs W. H. Reese and James Morrison and the defendant, J. W. Collopy, in equal proportions.

The witness M. B. Ocheltree, who was the bookkeeper and secretary for the plaintiff W. A. Chamness, testified that the defendant, Collopy, came to the office of W. A. Chamness frequently and sent out from time to time letters negotiating for leases in the vicinity of Oglesby, Okla., in which he made an effort to obtain leases, evidently in accordance with the terms of the arrangement between these parties, and signed to the letters the name of Chamness & Collopy. Copies of some of these letters were introduced in evidence, clearly showing that up until the time the defendant, Collopy, acquired the Braden lease he was acting in accordance with the provisions of the agreement which had been entered into between the parties to this controversy.

The defendant offered no evidence except his own oral testimony, in which he contradicted most of the material facts testified to by the three plaintiffs. In his testimony he stated, in substance: That there was never any agreement as to a partnership between the parties in oil and gas leases, though he stated that he went with the three plaintiffs to look over the country around Oglesby, but that he was representing himself in the matter of obtaining leases. He admitted that he remained over for two

or three days at the request of the other parties, and that they gave him money in the amount of $20 to pay his expenses; that he obtained what had been referred to as the Cox lease and let the plaintiffs Reese and Morrison in on it; that they paid $240 for it, and when it was afterwards sold for $300 the expenses were taken out and the money divided equally among the three. He testified that he offered to let them in at three-fourths interest, to the three plaintiffs, on the Braden lease, which provided for a one-sixth royalty, and that they refused to take it because it was a one-sixth royalty instead of one-eighth.

The plaintiffs testified that the defendant represented that he had to pay $50 an acre bonus on the Braden lease in addition to it retaining a one-sixth royalty, and that they told him that was too much. And the plaintiff Chamness testified, which was not disputed, that he stated that if the lease retained only a one-eighth royalty, he would pay $2,000 for a one-half interest in it; and that after the defendant stated that he could not obtain the lease for a one-eighth royalty, the parties separated, and after leaving Chamness' office the defendant and the plaintiff Reese went to the Tulsa Hotel on the same day or the next, and that the defendant showed Reese the lease retaining a one-sixth royalty and stated that he obtained the same without the payment of any bonus; that they had some sharp controversy about the matter, in which unpleasant words were passed, and separated.

And the plaintiffs next learned that the defendant had assigned an interest to Twitchell, who was drilling upon the lease, and in a few days brought in the first well. And immediately thereafter the plaintiffs filed their action.

The plaintiffs testified in rebuttal and contradicted this testimony of the defendant. There was no attempt made to impeach the testimony of any of the witnesses, and the case presented by the record is one where the three plaintiffs and one other witness, the bookkeeper of the plaintiff Chamness, testified to a state of facts which, if true, clearly establishes the right of the plaintiffs to recover, which testimony was in no way impeached or the credibility of the witnesses attacked, except by the contradictory testimony of the defendant on most of the material issues.

In these circumstances, this being a case purely of equitable cognizance, it becomes the duty of this court to weigh the evidence and determine whether or not the judgment of the trial court is clearly against the weight of the evidence. Interstate Building & Loan Co. v. Oklahoma City, 84 Okla. 227, 203 Pac. 172; Parks v. Sinai Oil & Gas Co., 83 Okla. 295, 201 Pac. 517; Lamb v. Alexander, 83 Okla. 292, 201 Pac. 519; Dike v. Martin, 85 Okla. 103, 204 Pac. 1106; Foley v. Brown, 85 Okla. 1, 204 Pac. 267; Croker v. Shurley, 86 Okla. 178, 207 Pac. 91; Johnson v. Johnson, 85 Okla. 274, 206 Pac. 205. However, the foregoing rule is not controverted by the parties, but its correctness is conceded by counsel in their briefs.

At the close of all of the testimony the plaintiffs made the following offer or tender, to wit:

"Now at the close of all of the testimony of this case come the plaintiffs and pray for an accounting herein, and offer to pay into court or to the defendant their proportionate share of the costs expended in the development of said lease for oil and gas purposes; that is to say, they offer to pay five-sixths of all the expenses incurred by the defendant in the proper and legitimate development of said lease up to the present time,— he claiming to own an undivided one-half interest therein."

Revised Laws 1910, provides as follows:

"4439. Partners as Trustees for Each Other. The relations of partners are confidential. They are trustees for each other, as to partnership property.

"4440. Good Faith Required Among Partners. In all proceedings connected with the information (formation), conduct, dissolution and liquidation of the partnership, every partner is bound to act in the highest good faith toward his copartners. He may not obtain any advantage over them in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.

"4441. Accountability. Each member of a partnership must account to it for everything that he receives on account thereof, and is entitled to reimbursement therefrom for everything that he properly expends for the benefit thereof, and to be indemnified thereby for all losses and risks which he necessarily incurs on its behalf."

This court in the case of Rees v. Egan, 66 Okla. 20, 166 Pac. 1038, quoted with approval the principle announced in the statutes, supra, which is found in Bispham's Principals of Equity, p. 150, where the author quotes with pproval the following language:

"Whenever one person is placed in such relation to another, by the act or consent of that other or the act of a third person or of the law, that he becomes interested for him, or interested with him, in any subject or property or business, he is prohibited from

acquiring rights in that subject antagonistic to the person with whose interest he has become associated."

In the case of Goldthwaite v. Janney, 102 Ala. 431, 28 L. R. A. 161, it was held in substance that when real estate is purchased for or on behalf of the firm, paid for entirely or largely by the firm in the conduct of its business, such real estate will, in equity, be deemed partnership property, even though the legal title be taken in the name of one partner individually; and this rule holds whether the title is, so taken by mutual agreement between the partners or without the knowledge of the other.

Hodgson v. Fowler, 24 Colo. 278, 50 Pac. 1034; Nasholds v. McDonell, 6 Idaho, 377, 55 Pac. 894; Van Buskirk v. Van Buskirk, 180 Ill. 599, 35 N. E. 383.

The rule announced above applies, even though partners engage in but a single transaction. Jones v. Davies, 60 Kan. 309, 56 Pac. 848.

This case was tried in the court below by the plaintiffs upon the theory that the lease in question was partnership property, that the same was acquired by the parties, plaintiffs and defendant, in pursuance of the partnership agreement, which was fully set out by the plaintiffs in their petition, the sufficiency of which petition was not challenged by the defendant. The defendant denied the existence of a partnership relation. The court's judgment was in favor of the defendant.

We think the judgment of the trial court was clearly against the weight of the evidence, and for that reason should be reversed.

The judgment is, therefore, reversed, and the cause remanded, with directions to the trial court to cause to be made an accounting between the parties on the basis of the defendant's ownership of a one-sixth interest in one-half of the lease and the plaintiffs' five-sixths interest in said one-half of the lease, charging the plaintiffs with their pro rata share of the amount expended in the development of the lease.

KENNAMER, NICHOLSON, COCHRAN, BRANSON, HARRISON, and MASON, JJ., concur. McNEILL, J., dissents; KANE, J., did not participate.