**CAMERON et al. v. WHITE et al.**

No. 18038. Opinion Filed Sept. 20, 1927.

Rehearing Denied Jan. 10, 1928.

(Syllabus.)

1. **Receivers—Jurisdiction to Appoint Receiver for Property in Possession of Trustees.**

The appointment of a receiver is not void for want of jurisdiction when the property is in possession of trustees and the trustees and the res of the trust estate are within the jurisdiction of the court and the trustees are served with due process.

2. **Same—Power to Appoint Receiver not Defeated by Mere Defect of Parties.**

A mere defect as to parties will not prevent the court from entering the order appointing a receiver at a preliminary stage of the suit when justice requires it.

3. **Trusts—Action for Interest in Trust Estate—Trustees Only Necessary Parties Defendant.**

Where plaintiff has a definite aliquot interest or a moiety in the trust estate and is suing for that interest, the only necessary parties defendant are the trustees.

4. **Parties—Suit in Name of One or More for Benefit of All Where Interested Parties Numerous.**

Under section 221, Compiled Oklahoma Statutes, 1921, when the question in an action is one of common or general interest to many persons, or when the parties are very numerous and it is impracticable to bring all parties before the court, one or more may sue or defend for the benefit of all.

5. **Receivers—Right to Interlocutory Order for Receiver not Defeated by Mere Defect of Parties.**

The fact that parties are omitted who might properly have been brought before the court in the main suit for a complete determination of the issues involved therein, is not necessarily a reason for denying an interlocutory order for a receiver.

6. **Trusts—Removal of Trustees Whose Interests Become Antagonistic to Those of Beneficiaries.**

When trustees become interested in the subject of their trust to the extent that their interest is antagonistic to that of the

beneficiaries, such trustees should be removed by a court of equity having jurisdiction of the subject-matter and proper substitution made.

### 7. Appeal and Error—Function of Supersedeas Bond—Appeal from Order Appointing Receiver.

(A) Appeal to the Supreme Court does not depend upon the giving of a supersedeas bond. (B) The function of a supersedeas bond on appeal from an order appointing a receiver is to suspend the functioning of the receiver pending the appeal.

### 8. Appeal and Error—Effect of Appeal to Suspend Jurisdiction of Trial Court.

While an appeal is pending in this court the trial court is without jurisdiction to make any order involving any question covered by the appeal.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by Otis White and others against James Cameron and others, trustees. From an order of the District Court of Okmulgee County refusing to vacate an order appointing a receiver pendente lite, Cameron and others appeal. Affirmed. Pending appeal and on January 15, 1927, on motion of G. W. Burnett and H. D. Moore, the District Court of Okmulgee County vacated the order appointing receiver. On January 19, 1927, an alternative writ of prohibition was issued prohibiting the enforcement of the order vacating the appointment of the receiver. Writ made permanent as amended.

Hummer & Foster and Owen, Armstrong, Short & Looney, for plaintiffs in error.

M. R. Lively, John C. Warnock, and Ames, Lowe & Cochran, for defendants in error.

RILEY, J. There is brought in question by this appeal the validity of an order of the district court of Okmulgee county, entered November 12, 1926, appointing a receiver pendente lite for certain assets purchased by the plaintiffs in error as trustees for certain depositors of the First National Bank of Henryetta, insolvent. Likewise in question is the validity of an order of the district court of Okmulgee county, entered on the 15th day of January, 1927, sustaining the motion of G. W. Burnett and H. D. Moore, on behalf of themselves and the depositors of the First National Bank of Henryetta, insolvent (who maintain they were not parties to the suit when the receiver was appointed), vacating and setting aside said appointment. On January 19, 1927, upon application, there was issued an alternative writ of prohibition out of this court, directed to the court below, prohibiting the enforcement of the order vacating the appointment of the receiver.

The First National Bank of Henryetta failed on July 20, 1923; a receiver was appointed by the Comptroller of Currency to take charge of the bank. Thereafter the depositors met frequently with a view of reorganizing the bank and plans varied from time to time. Mr. A. K. Wilder figured prominently in the final reorganization. Finally the depositors elected four trustees, and 771 depositors, amounting to 75½ per cent., and with deposits in the sum of $673,451.60, assigned their receiver's certificates to the trustees, accompanied by power of attorney authorizing the trustees to represent the said depositors in incorporating a new bank.

Mr. Wilder testified in effect that in going over the plans it was found to be necessary to get some money to assist in the operation; that he would take care of a block of stock and some of his friends would join him; that he addressed an open meeting of depositors and informed them that it was necessary to make some inducement for additional funds. (C.-M. 54-74.)

The defendants below, plaintiffs in error, Cameron, Hillman, Johnson, and Wilson, were elected trustees to represent the depositors of the defunct bank who desired to enter the plan of reorganization. The trustees worked with Mr. Wilder toward the organization of a new bank under the name of the People's National Bank of Henryetta, with a capital of $100,000 and a surplus of $25,000.

The receiver of the old bank had declared a ten per cent. dividend and it was estimated there would be an additional dividend of 14 or 15 per cent. Mr. Wilder's plan was that depositors in the old bank should use their first ten per cent. dividend for the purchase of stock in the new bank; that their second dividend would be applied to the purchase of assets of the old bank; that the new bank would loan such additional funds as were necessary in this purchase, and that after the purchase of the assets of the old bank the same would constitute a trust estate to be administered and liquidated by the new bank for the benefit of "those who subscribe to our plan." The depositors solicited, being only those whose accounts were over $50 (those under $50 being paid their dividend in cash), were almost unanimous in agreeing to the plan, and Mr. Wider, in accord with the enterprise, solicited new capital on the basis of a pro rata participation in the liquidation of assets of the

failed bank. Mr. Wilder subscribed for $10,-000 worth of stock in the new bank and procured a subscription for the same amount from Otis White, the plaintiff. A substantial block of stock was taken by the interveners, C. C. Calvert, J. F. Folmer, H. L. Pruitt, and James G. Sinfield, none of whom, except Sinfield, had been depositors in the failed bank.

Mr. Cameron and members of his family took considerable of the stock by the payment of cash. Dr. Robinson, a depositor, took some cash stock. So together sufficient money was raised to create the $100,000 capital and $25,000 surplus to organize the People's National Bank, 52 per cent. of the money being from dividends received by the trustees on behalf of depositors of the failed bank and 48 per cent. being from cash subscriptions for stock in the new bank.

When Mr. White made out his check for his purchase of stock and delivered it to Mr. Wilder, he requested to have the plan reduced to writing, and there is evidence to show that on January 15, 1925, and before Mr. White's check was delivered, a "proposal," set out as plaintiffs' Exhibit 1, was signed by Messrs. Cameron, Hillman, Johnson, and Wilson. It provided:

"After the payment of all collection charges and expenses incidental in connection with the reducing of the assets to money, to pay the balance of the proceeds received from the sale or collection of said assets to the stockholders of the People's National Bank of Henryetta, Oklahoma, in proportion to the amount of stock owned by each person holding stock "

Messrs. Wilder, White, Calvert, Folmer, Pruitt and Sinfield all paid their money in pursuance of and in reliance upon such proposition as reduced to writing in the proposal. The identical representations were made to each of them orally prior to their action thereon.

After the organization of the People's National Bank it was learned that the plans must be altered to some extent. The Comptroller of the Currency objected to the purchase of the assets by a new bank, and the trustees elected acted and purchased from the receiver of the First National Bank by $138,000, the assets of that bank. It was theretofore determined that the second dividend would be 14 per cent. This 14 per cent. dividend to the "depositor-stockholders" was applied to the purchase of the assets; the new bank purchased a part of the assets consisting of bank building and fixtures in the sum of $30,000. The new bank furnished the trustees sufficient cash to make up approximately 25 per cent. of the sum of $138,-000, paid for assets of the failed bank. Mr. Cameron, on behalf of himself, Joe Hillman, Joe Johnson and John Wilson, trustees, presented to the directors of the new bank the matter of distribution of the dividends on the assets of the failed bank, and the directors adopted a resolution by which the depositors in the old bank who were stockholders in the new one were preferred to the extent of 14 per cent. to the stockholders who paid cash for their stock.

The trustees proceeded with liquidation of the assets of the failed bank and paid to themselves and other depositors of the failed bank whom they represented a four per cent. dividend to the exclusion of stockholders of the new bank who had paid cash for their stock.

Such was the situation when Mr. White filed suit in the court below on behalf of himself and others similarly situated, praying the court to take jurisdiction of the administration of the trust estate, praying the establishment of a 1/10th interest in the trust estate on behalf of himself, and for the appointment of a receiver. Notice of application for appointment of the receiver was served on the four trustees. Final hearing was had on November 12, 1926.

The court found there were no allegations or evidence of bad faith on the part of the trustees, but evidence of a misunderstanding between the trustees and the stockholders for cash in the new bank. The court found that the trustees entered into an agreement with Mr. Wilder, heretofore set out as Exhibit 1, but that the trustees never acted upon that agreement or proposal, but sold stock to such men, a Dr. Robinson and others, upon the proposition that they would share in the proceeds of the failed bank only after the "depositor-stockholders" got their money back in the amount of 14 per cent.; that the stock sold by Mr. Wilder and his associates was sold on the proposition that they as stockholders for cash in the new bank would share pro rata in the proceeds from the failed bank. The court further found that the trustees had handled the property to the best advantage and that the misunderstanding as to dividends could be protected by a temporary injunction; that the trustees were personally interested in large amounts; that the payment of four per cent. dividend was not a misappropriation of funds, but payment in good faith and that there remained sufficient to pay plaintiff and others similarly situated their pro-

portionate part in the event the court should hold they were entitled to it.

On the 13th day of November, 1926, the court appointed Harwood Keaton receiver for the property and fixed his bond at $50,-000. He qualified and filed an inventory, whereupon, and on December 9th, the court increased the receiver's bond to $100,000. On December 10th, defendants in error Folmer, Calvert, Pruitt, and Sinfield, filed their petition of intervention, alleging they were similarly situated as was plaintiff White and adopted his pleadings.

A motion to discharge the receiver was denied and defendants below appealed and lodged the appeal here December 21, 1926, without superseding the order appointing the receiver or the judgment overruling their motion to discharge and vacate the appointment.

On January 11, 1927, G. W. Burnett and H. D. Moore, on behalf of themselves and all others similarly situated, filed in the lower court a special appearance and motion to vacate the order appointing the receiver, alleging that they were cestuis que trustent and that they had not been made parties in the case and that they were necessary parties, and a response was filed and a hearing had on January 15, 1927, at which time the judge of the district court (who was the successor in office of the judge appointing the receiver) sustained the motion, whereupon the defendants in error made application to this court in this cause on appeal for a writ of prohibition staying the discharge of the receiver on the ground that the court below was without jurisdiction to act pending appeal. An alternative writ of prohibition was issued out of this court on January 19, 1927, and subsequently amended in minor details.

It is contended by plaintiffs in error under their second proposition that the trial court erroneously appointed the receiver for the following reasons:

(a) Because there is no showing that the property was in danger of being lost, removed, or materially injured.

(b) Because the pleadings and the evidence do not disclose that the defendants in error have a probable interest in the property.

(c) Because the depositors for whom the plaintiffs in error were acting as trustees were necessary and indispensable parties.

We shall dispose of these contentions before considering the first proposition, which concerns the alternative writ of prohibition issued by this court subsequent to the appointment of the receiver.

Section 518, Compiled Oklahoma Statutes, 1921, provides, in part:

"A receiver may be appointed by the Supreme Court, the district or superior court, or any judge of either, or, in the absence of said judges from the county, by the county judge:

"First. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owing or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property, or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured. * * *

"Sixth. In all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

Now, considering contention (b), for we should consider the interest in the property prior to its safety: Safety may depend upon the interest or lack of interest of the one in possession. The record evidence discloses that Mr. Cameron, plaintiff in error, testified that the $30,000 and the $2,100 (invested in assets of the defunct bank held by the trustees) came out of the People's National Bank, in which Mr. White, defendant in error, was a stockholder, and that he recognized that Mr. White had an interest in those assets. (C.-M. p. 284).

Mr. Hillman, defendant below, testified:

"Q. Mr. Hillman, your position in this matter is that the stockholders in the People's National Bank, all of the stockholders, have an interest in these assets at a time when certain things are paid?

"A. It was the understanding at the time we went into this last agreement that after this fourteen per cent. was paid, they were to participate in the balance at that time, yes." (C.-M. p. 284.)

The court below by its judgment found, and the evidence discloses, that the plaintiffs below had a probable interest in the trust estate.

We now consider contention (a), Was the property in trust in danger of being lost, removed, or materially injured?

It is undisputed that the trustees had paid a four per cent. dividend to certain "depositor-stockholders" to the exclusion of Mr. White and the interveners. It is beyond

question that, if left in charge of the estate, unrestrained, the trustees would pay an additional ten per cent. to the old depositors to the exclusion of the stockholders for cash in the People's National Bank, who, we have said, had a probable interest in the trust estate. The four per cent. dividend paid was the sum of $26,938.06. The additional amount of ten per cent. proposed to be paid would be $67,345.16. The evidence discloses that the trustees were not under bond protecting the proper execution of the trust estate. Nor is it shown that liquidated portions of the estate in their hands or deposited by them were protected in any manner by depository bond or otherwise, except by the good faith and honesty of those gentlemen in possession. Already diverted from plaintiff's probable interest was the sum of $26,938.06, which together with that proposed to be diverted makes the sum of $94,283.22, which must be considered as a matter of law in hostile possession as to plaintiff's probable interest. This amount is in excess of the net financial worth of all the trustees, according to their testimony.

The rule relative to the appointment of a receiver for trust property, as set forth in 23 R. C. L. 31, par. 28, includes "misapplication, or improper disposition of the trust fund, or a denial or destruction of the trust estate by the trustee." Numerous cases are cited in 72 A. S. R. 95, in the note following the case of Cameron v. Groveland Imp. Co., 20 Wash. 169, to support the rule that where the property, by any of these acts, becomes endangered or placed in a state of insecurity, which due care or conduct would have prevented, it is proper to appoint a receiver for the trust estate, to prevent its loss, whatever the nature of the plaintiff's right. It was further held in Carson v. Combe, 86 Fed. Rep. 202, that a receiver is proper to preserve a trust fund pending distribution.

We hold the district court is not shown to have abused sound discretion in considering that there was imminent danger of loss. Contention (a) therefore fails.

As to contention (c), concerning the necessity of making the depositors of the failed bank parties to the action, it must be borne in mind that due notice was served upon each of the trustees, who were themselves stockholders of the failed bank and of the class of beneficiaries represented by themselves as trustees. In plaintiff's reply below he pleaded that defendants never disclosed to him the names of the certain depositors of the failed First National Bank for whom defendants acted as trustees and

that the names and identities of said certain depositors were within the knowledge of defendants and plaintiff had no means of ascertaining such information, but that he waived objection to the bringing in of such persons as parties. It must be remembered that the trustees represented 771 depositors of the failed bank. A mere defect as to parties will not prevent the court from entering the order appointing a receiver at a preliminary stage of the suit when justice requires it. 34 Cyc. 117; Probosco v. Probosco, 30 N. J. Eq. 108; Whitehead v. Wooten, 43 Miss. 523; Chambers v. Barker, 2 Neb. 523, 89 N. W. 388.

We hold that the appointment of a receiver is not void for the want of jurisdiction when the property is in possession of trustees and the trustees and the res of the trust estate are within the jurisdiction of the court and the trustees are served with due process. As to the necessity of notice and conditions warranting appointment of a receiver without notice in such proceedings, see: Pyeatt v. Ins. Co., 38 Okla. 15, 131 Pac. 914, reported in 37 Ann. Cas. 1915 C, 897, and cases cited.

Herein the lower court found that the plaintiff White owned a 1/10th interest in the People's National Bank, which he bought on the written proposal granting to him or proposing to grant unto him a 1/10th interest in the assets of the defunct First National Bank—at any rate, it is clearly established that even in the event it should ultimately be adjudged that plaintiff White shall not participate in the assets in the hands of the trustees until after the "depositor-stockholders" partake to the extent of 14 per cent., then he would certainly participate in the assets to the extent of a 1/10th interest after payment of the 14 per cent.—so he has an exact interest in either event.

It has been held that where the plaintiff has a definite aliquot interest or a moiety in the trust estate and is suing for that interest, the only necessary parties defendant are the trustees. Hitchcock v. Linsley, 17 Hun (N. Y.) 556; General Ins. Co. v. Benson, 5 N. Y. Super. Ct. 168; Hubbard v. Burrell, 41 Wis. 365.

In Pickering v. DeRochemont, 45 N. H. 67, it was held:

"When the share of one of the several cestuis que trustent in a trust fund is ascertained and known, as where it is a moiety or other aliquot part of the fund, a suit for a breach of the trust may be maintained against the trustee, by a person entitled to that share, without joining the other cestuis que trustent as parties."

The plaintiff White's petition below alleged that under a solemn, binding, and executed contract, he was the owner of a 1/10th interest in the trust estate. The trial court found his probable interest in a definite amount, and so under the rule above he was entitled to maintain his action against the trustees without joining all the cestuis que trustent as parties.

In the absence of a motion of the defendants below to bring in the cestuis que trustent under the provisions of section 224, Compiled Oklahoma Statutes, 1921, it would seem that at least the matter was within the discretion of the court under section 221, Compiled Oklahoma Statutes, 1921, which provides:

"When the question is one of common or general interest of many persons, or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

In 34 Cyc. 115, 116, the text states:

"On the other hand, that parties are omitted who might properly have been brought before the court in the main suit for a complete determination of the issues involved therein, is not necessarily a reason for denying an interlocutory order for a receiver." Asheley v. Asheley, 59 App. Div. 611, 69 N. Y. S. 173; Barclay v. Quicksilver Mining Co., 9 Abb. N. S. (N. Y.) 283; Rapp v. Reehling, 122 Ind. 255, 23 N. E. 68.

It is agreed by all parties that the defendants were trustees under an express trust, and attorneys in fact for the depositors of the defunct bank. These trustees entered into an agreement under which White, plaintiff below, purchased stock in the new bank on the basis that they would purchase the assets of the old bank and such assets would be held by the trustees for the joint benefit of the beneficiaries of the express trust and those who should subscribe cash to the organization of the new bank. When the trust estate was purchased the defendants became not only trustees under an express trust for the depositors of the old bank, but also trustees under a constructive trust for the plaintiff and those similarly situated. Dike v. Martin, 85 Okla. 103, 204 Pac. 1106.

Plaintiffs in error contend that the proposal of January 15, 1925, was a proposal to the People's National Bank as a corporation and not one to plaintiff and his associates. The benefits proposed were to inure to individuals, in that the proceeds of the trust estate were proposed to be paid out to the stockholders of the People's National Bank in proportion to the amount of stock of each person holding stock.

In McCaleb v. McKinley, 80 Okla. 38, 194 Pac. 105, it was held:

"It is equally well settled that if one be induced to confide in the promise of another that he will hold in trust, or that he will so purchase for one or both, and is thus led to do what otherwise he would have foreborne, or to forbear what he contemplated to do, in the acquisition of an estate whereby the promisor becomes the holder of a legal title, an attempted denial of the confidence is such a fraud as will operate to convert the purchaser into a trustee ex maleficio."

As trustees for plaintiff White from the date of the acceptance of his money and the purchase of the assets of the failed bank, the defendants occupied a fiduciary relation to him. Wells v. Schriver, 81 Okla. 108, 197 Pac. 460.

The attempted modification participated in by defendants of the date of May 27, 1925, of the original proposal by which plaintiff bought stock, was an attempted acquisition by the trustees of an interest adverse to that of plaintiff White, who testified he had no notice of the meeting and that he never agreed to the contemplated disposition of the assets other than by the original agreement of January 15th, under which he purchased stock. Mr. Calvert and Mr. Folmer testified the new proposal was over their protest, yet these trustees as members of the board of directors of the People's National Bank acted in a manner hostile to the interest of their trust with White and did deprive this beneficiary of his claim pro tanto in the trust estate.

The trustees paid themselves and certain other beneficiaries a four per cent. dividend and determined by their act and resolution that plaintiff White and others similarly situated were to be excluded from participating in such proceeds.

In Chamnes v. Collopy, 90 Okla. 71, 215 Pac. 953, this court held:

"Whenever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him in any subject, or property, or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated."

And so, when it was ascertained that the trustees possessed a personal interest in the trust fund and their interest conflicted and was antagonistic to the interest of the bene-

ficiaries to such an extent as made their continuing duties incompatible, such trustees should be removed and a disinterested person or persons substituted to take over and administer the estate for the interest and protection of all parties interested as beneficiaries of such trust fund.

Farnsworth v. Hatch (Utah) 151 Pac. 537, presents a very learned view of the matter presented. There it is said:

"Her counsel, however, further contend that the mere fact that respondent claims property which is also claimed by the estate, or may ultimately be found to belong to the estate, does not disqualify or unfit her to act as co-executrix, since the co-executrix can, and no doubt will, guard the interests of the state. Indeed, it is claimed that he may commence and prosecute further actions against respondent to protect the interests of the estate. The following authorities are cited in support of the foregoing contention: In re Bauquier's Estate, 88 Cal. 302, 26 Pac. 178, 532; In re Brundage's Estate, 141 Cal. 538, 75 Pac. 175; In re Healy's Estate, 137 Cal. 474, 70 Pac. 455; Clark v. Patterson, 214 Ill. 533, 73 N. E. 806. The first two cases cited arose on applications for the appointment of administrators. The court held that the mere fact that the petitioners claim property that was likewise claimed by the estate constituted no disqualification under the statute to serve as administrator. To the same effect is the case from Illinois, namely, Clark v. Patterson, supra. It is quite true that, as a general rule, those who are directly interested in the estate are usually selected and appointed as administrators or executors. Even a creditor is a proper person to act in such capacity. Again, a person may not be disqualified merely because he claims property which is also claimed by the estate. But when the claims of the representatives are resisted by the estate, and litigation ensues, then the interests between the estate and the representatives may become so conflicting and so serious that it is no longer proper for the representatives to remain in office. That such may be the result is very strongly intimated in the decisions just referred to, and it is there suggested that, if such a condition should arise, the courts possess ample power to remove the representative for that reason alone. In re Healy's Estate, supra, was an application for removal, the same as here, and although the facts there were clearly insufficient to justify a removal upon the ground of conflicting interests, or otherwise, yet two of the Justices dissented.

"Upon the other hand, counsel for the appellants refer us to cases in which the courts have removed administrators or executors upon the ground that their interests conflicted with those of the estate they represented. Among the cases cited on that sub-

ject, are the following: In re Gleason's Estate, 17 Misc. Rep. 510, 41 N. Y. Supp. 418; Marks v. Coats, 37 Or. 609, 62 Pac. 488; Putney v. Fletcher, 148 Mass. 247, 19 N. E. 370; Mills v. Mills, 22 Or. 210, 29 Pac. 443; Kellberg's Appeal, 86 Pa. 129-133; In re Wallace, 68 App. Div. 649, 74 N. Y. S. 33. In Marks v. Coats, supra, the court, in passing upon the question says:

" 'One whose personal interests are in conflict with his duty as administrator is not a proper person to hold the office.'

"In Putney v. Fletcher, supra, the Supreme Judicial Court of Massachusetts, in the course of the opinion, said:

" 'An executor or administrator is deemed unsuitable when he has any conflicting personal interest which prevents him from doing his official duty.'

"To the same effect are the cases last above cited. In the very nature of things such must be the law. The old proverb, 'No man can serve two masters,' or as the Spanish put it, 'He who has two masters to serve must lie to one of them,' is as true now as it ever was, and is as applicable in the administration of estates as elsewhere. Indeed, in such matters courts should be very careful to prevent the claimants or creditors from passing upon their own claims, where such claims are being contested. In the nature of things it is not possible for anyone to act with perfect impartiality and fairness in a matter in which he claims valuable and important interests; that fact is universally recognized, and especially in our courts of justice, and the only reason that it is not always strictly applied is because it is impractical to do so."

The duties and relations of an executor under a will to the beneficiaries under the will are analogous to the duties and relations of trustees administering a trust estate to the beneficiaries under the trust. See Gartside v. Gartside (Mo.) 20 S. W. 669.

From the authorities set out we have seen that it is the privilege and duty of the court, when a sufficient antagonistic interest appears, to remove trustees in order to protect the interest of all who have a probable interest in an estate, and pending a final determination of the cause it may become necessary, in order to preserve the trust estate pending distribution, to appoint a receiver. Such an appointment would fall under the 6th subdivision of section 518, Compiled Oklahoma Statutes, 1921.

Here Mr. Cameron testified that, after the proposed payment of the additional ten per cent. dividend, in all probability there would be no funds left in the trust estate. It would seem that plaintiff White would be irreparably damaged should further divi-

dends be apportioned to his exclusion, and irrespective of his ultimate interest it would appear to be in the discretion of the court to act in appointing a receiver so as to prevent the necessity of multitudinous suits to recover under the facts presented in the case at bar.-

We, therefore, conclude that contention (c), as presented, must fail. We hold that the depositors as a whole were not indispensable parties, and their presence as parties under the facts here presented was not jurisdictional of the power of the court to enter the order appointing the receiver pendente lite, nor did the court abuse its discretion in making the appointment or in refusing to vacate the order of appointment.

The first proposition of plaintiffs in error is based upon the contention that the appeal did not deprive the lower court of jurisdiction to vacate the order appointing the receiver.

The statutes of this state, section 525, Compiled Oklahoma Statutes, 1921, expressly authorize an appeal to be taken from an order appointing a receiver or from an order refusing to vacate a receivership. The appeal in this case was taken under that statute and jurisdiction of this court was invoked by these plaintiffs in error. There was but one question presented by the appeal and that was the question of the appointment of a receiver. If the Supreme Court had jurisdiction in said receivership matter, how could it be said that the district court of Okmulgee county had jurisdiction pending the appeal? Ordinarily it would seem that both courts could not have jurisdiction at the same time, although in Siddell v. McMillan 45 Okla. 800, 146 Pac. 911, it was held that where judgment had been rendered against a defendant constructively summoned, who did not appear, such defendant might commence proceedings in error, in this court by petition in error and transcript of the record and at the same time invoke the jurisdiction of the district court to open said judgment and permit them to defend pursuant to section 4728, Revised Laws 1910 (section 256, Compiled Oklahoma Statutes, 1921), as a cumulative remedy.

In Cusher v. Ricketts et al., 72 Okla. 168, 179 Pac. 593, it was held that the institution of proceedings in error to reverse an order granting a new trial did not of itself, without a supersedeas bond or order of the trial court or Supreme Court staying proceedings, operate to suspend further proceedings in the court below, and that the court below

in proceeding with the case had jurisdiction to dismiss the cause, and in that case Short v. Chaney, 66 Okla. 258, 168 Pac. 425, was overruled in so far as it conflicted.

Yet this court, in Egbert v. St. L. & S. F. Ry. Co., 50 Okla. 623, 151 Pac. 228, held (without reference to a supersedeas bond) that when the Supreme Court acquires jurisdiction of a cause by appeal, the jurisdiction of the trial court is suspended, and it remains suspended until the mandate from the Supreme Court has regularly reached it and is spread upon its records.

Dooley v. Foreman, 94 Okla. 163, 221 Pac. 47, followed the above case, quoting again from Short v. Chaney, supra.

In Stetler v. Boling, 52 Okla. 214, 152 Pac. 452, it was held:

"While an appeal is pending in this court the trial court is without jurisdiction to make any order involving any question covered by the appeal, but matters independent of and distinct from the questions involved in the appeal, and which are purely collateral or supplemental, lying outside of the issues framed in the case appealed, or arising subsequent to the delivery of the judgment from which the appeal is prosecuted, are not taken from the jurisdiction of the trial court by appeal. The general rule that the case leaves the jurisdiction of the trial court when the appeal is perfected is not impinged by holding that purely collateral or supplemental matters are left under the control of the trial court, notwithstanding the loss of jurisdiction over that part of the case taken to the higher court.

"The rule above stated finds support in many cases, among which we cite the following: Herbert v. Wagg et al., 27 Okla. 674, 117 Pac. 209; Burnett v. Jackson, 27 Okla. 275, 111 Pac. 194; 4 Enc. L. & P. 251, note 21; 2 Cyc. 978; Hayes v. Frey et al., 54 Wis. 503, 11 N. W. 695; Kemp et al. v. Nat. Bank of the Republic of New York, 109 Fed. 48, 48 C. C. A. 213; Line et al. v. State ex rel. Louder, 131 Ind. 468, 30 N. E. 703."

American Investment Co. v. Wadlington, 122 Okla. 56, 250 Pac. 802, followed the case of Egbert v. St. L. & S. F. Ry. Co.. supra, and quoted from the case of County Commissioners of Rogers County v. Baxter. 113 Okla. 280, 241 Pac. 752, based on Dooley v. Foreman, supra.

The cases following Dooley v. Foreman, supra, do not discuss the effect of a supersedeas bond or the failure to give it as in the case at bar.

Supersedeas on appeal from an order refusing to discharge (as presented herein) is merely intended to stay further proceed-

ings. Suit v. Hochstetter Oil Co., 63 W. Va. 317, 61 S. E. 307. An appeal from and the giving of a supersedeas bond in an order appointing a receiver suspends the functioning of a receiver pending appeal; the receiver cannot take or retain possession of the property. Continental Natl. Bldg. Ass'n v. Scott, 41 Fla. 421, 26 S. 726.

An appeal to the Supreme Court does not depend upon the giving of a supersedeas bond, and the only purpose and effect of a supersedeas bond is to stay execution upon the judgment. Hutchings v. Winsor, 92 Okla. 37, 217 Pac. 1044. Therefore, the failure to give supersedeas bond in such a case as this —the only effect would be to permit the receiver to act, to take possession of the property, and to perform the duties of his office.

It is contended that the order appointing the receiver was an interlocutory order which could be set aside at any time by the trial court, and even though it were a final order, could be set aside during the same term, which was done in this case.

The statute providing for an appeal in such cases as this requires the appeal to be perfected within ten days from the date of the order. When the appeal has been perfected from the order, by force and by right of the statute, then the district court loses jurisdiction of the particular issue appealed just as effectively as though the order from which the appeal was taken had been a final judgment. When the Supreme Court acquires jurisdiction on appeal, the lower court loses jurisdiction of the particular issue. In Combes v. Adams (N. C.) 63 S. E. 186, it is said:

"While the court has held that an appeal from an interlocutory order leaves the action for all other purposes in the court below, the decision is also to the effect that the disposition of the interlocutory order and all questions incident to and necessarily involved in the ruling thereon are carried by the appeal to the appellate court, and the judge below, therefore, had no power to entertain or act upon appellant's motion."

It is contended that Burnett and Moore, depositors of the failed bank, were not parties to the cause at the time the interlocutory order of appointment of a receiver was made, and therefore they are not bound by the judgment. One phase of this matter was considered under (c) of the first proposition submitted.

Section 209, Compiled Oklahoma Statutes, 1921, provides in part as follows:

"Every action must be prosecuted in the name of the real party in interest, **except as otherwise provided in this article.**"

Section 211, Compiled Oklahoma Statutes, 1921, following, provides:

"An executor, administrator, guardian, **trustee of an express trust,** * * * may bring an action without joining with him the person for whose benefit it is prosecuted. Officers may sue and be sued in such name as is authorized by law. * * *"

In Wyman v. Herard, 9 Okla. 35, 59 Pac. 1009, it was held in an action against a trustee that failure to make the beneficiaries parties might be waived by the trustee. It is said:

"And the trustee may invoke the presence of the beneficiaries of the trust, or dispense with their presence, as parties, since the rule that the beneficiaries, if their interests are involved, should be before the court is one which has been established for the protection of the trustee, and in order to avoid the repeated vexation of the trustee of a multiplicity of suits."

Here the defendants are sued as trustees of an expressed trust, and failure to make the beneficiaries parties may be waived by the trustees, and the objection of necessary parties was waived. Harper v. Hendrix (Kan.) 31 Pac. 734.

Section 221, Compiled Oklahoma Statutes, 1921, provides:

"When the question is one of common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

Here there were over 771 beneficiaries, who, according to the allegations of plaintiff, were unknown to him.

39 Cyc. 453, stated the rule and exception as follows:

"The general rule as to parties is that in suits respecting the trust property, brought either by or against the trustees, the cestuis que trustent are necessary parties, especially where the object is to enforce a claim consistent with the validity of the trust. Many exceptions have been made to this rule, some for convenience, and others for the reason that by the terms of the trust, or from the nature of the suit, the trustees themselves represented the cestuis que trustent. This exception is particularly applicable where the beneficiaries are so numerous as to make it difficult or impracticable to make them all parties. On the same ground, it has been laid down that where the only object of the suit is to transfer the trust property into the hands of the trustees, the cestuis que trustent need not be parties." Miles v. Davis. 19 Mo. 408.

The exception to the rule is applicable here. 26 R. C. L., p. 1344.

In this case the four defendants as trustees and as beneficiaries were before the district court representing the movants. The removal of the trustees and the appointment of a receiver in nowise affects the ultimate rights of the beneficiaries of the estate. It merely serves to protect and preserve the rights of all parties to the action. We hold that Burnett and Moore were bound by the interlocutory order in that they were represented by trustees of their express trust and attorneys in fact; that the district court was without jurisdiction to vacate the order pending on appeal; that the case of Cusher v. Ricketts, supra, is not decisive of the issue here, but concerns only further proceedings in the court below in progress of the trial in the absence of a supersedeas bond; that Siddell v. McMillan, supra, should be distinguished for the reason that it is based upon a different statute than that invoked by appointment of a receiver and concerns the rights of defendants constructively served; that Belsky v. Druzstov, 101 Okla. 137, 224 Pac. 174, relied upon, follows the case of Cusher v. Ricketts et al., supra, and Morrissey v. Schriver, 88 Okla. 269, 214 Pac. 702, is not applicable to the facts here presented. We direct that the alternative writ of prohibition heretofore issued, as amended, be made permanent, but restricted so as to restrain the lower court from discharging the receiver only pending finality of this decision and the spreading of this mandate on the records of the court below.

The judgment of the lower court refusing to vacate the order appointing the receiver is affirmed.

MASON, V. C. J., and PHELPS, LESTER, and HUNT, JJ., concur. BRANSON, C. J, and CLARK, J., dissent.

Note.—See under (1) 34 Cyc. p. 115; 23 R. C. L. 31. (2) 34 Cyc. p. 117. (3) 39 Cyc. p. 456 (Anno.) (4) 30 Cyc. p. 133; (5) 34 Cyc. p. 116. (6) 39 Cyc. p. 263; 26 R. C. L. 1276. (7) 3 C. J. p. 1326, §1457; p. 1328, §1459. (8) 3 C. J.•p. 1255, §1369; 2 R. C. L. 120.