ENOCHS, et al. *v*. MISS. TOWER BLDG., INC., et al.

Division A.   Feb. 5, 1951.

No. 37695  (50 So. (2d) 551)

Forrest B. Jackson, and Watkins, Edwards & Ludlam, for appellants.

Wm. Harold Cox, Wells, Wells, Newman & Thomas, and **Adams & Adams,** for appellees.

684

**McGehee, C. J.**

This is a suit to cancel and remove some alleged clouds from the title of the property that is commonly known as the Tower Building in Jackson, and which was sold under a bond mortgage on February 7, 1938, to satisfy an indebtedness owing to the Interstate Trust & Banking Company of New Orleans, Louisiana, in liquidation. The mortgage was executed on November 1, 1931, by the Pearl Realty Company, a domestic corporation for owning, operating, and controlling specifically the Tower Building properties. On January 3, 1949, the said Tower Building property was also sold under an execution on a judgment rendered May 16, 1938, against Pearl Realty Company in favor of the Interstate Trust & Banking Company, and which judgment was later revived for the principal sum of $241,201.09 in September 1945 in favor of Charles H. Russell, assignee of the original judgment, against the said judgment debtor. It is through the bond mortgage foreclosure and execution sales that the appellee Mississippi Tower Building, Inc., (by mesne conveyances under the former sale and as purchaser at the latter) now claims to own said property, subject to the lien of a deed of trust executed by it on April 2, 1945, in favor of the appellee Atlantic Life Insurance Company, to secure an original indebtedness of $350,000.00.

While the material facts in the case are practically undisputed, as disclosed by several volumes of documentary evidence and oral testimony, there are numerous questions of law discussed in the nearly 500 pages of briefs and presented for decision, if we should hold that neither the bond mortgage foreclosure nor the sale by the sheriff under execution was valid. During the several weeks intervening since this voluminous record and the

exhaustive, if not exhausting, briefs, but nonetheless able ones, were submitted, we have given much study and due consideration to all of the questions involved and the decisions upon which the respective parties rely. The fact that we are taking a short-cut in this opinion to a decision of the case is not therefore due to any disposition to side-step any of the points presented for decision; we have gained fairly definite ideas as to how each of the questions should be determined, but we have concluded that the decision reached on the first of the questions stated in the next two succeeding paragraphs has rendered it unnecessary that we base our opinion on any other ground. Even so, the opinion will of necessity be long enough.

The validity of the foreclosure sale under the bond mortgage is challenged solely on the ground that the appointment of Myron Turfitt of New Orleans as successor trustee to the Interstate Trust & Banking Company, original trustee and principal beneficiary under the bond mortgage, was not in accordance with the terms and provisions thereof.

The validity of the sale under the execution is challenged on the ground that when the judgment was revived in September 1945 in favor of the execution creditor, Charles H. Russell, and against the judgment debtor, Pearl Realty Company, the said corporation had long since become non-existent on account of the suspension thereof having become final for failure to pay its corporate franchise tax to the State within one year after the same had become delinquent, and at the expiration of which period, Section 9327, Code of 1942, provides that "said organization, insofar as being a going concern, with rights to exercise powers originally granted are concerned, shall be considered as non-existent", it being the contention of its stockholders and creditors, as complainants, and who are the appellants, Miss Martha C. Enochs and others, that even though the corporation was not dissolved by any judicial proceeding, it was in-

capable of suing and being sued, since this was one of the powers originally granted; and it being the contention of the appellees that the suspension of the said corporation, although the same became final, did not have the effect of nullifying the charter or dissolving the corporation by operation of law but left the same intact so far as the full possession and control of its assets were concerned, subject to an administration thereof, since said Section 9327, supra, also provides ". . . and the disposition of assets, and winding up of the affairs of the organization may be accomplished in such manner as may be provided by law."

Without conceding or deciding that the judgment was not legally revived (since service of process for the time required by law was had upon an officer of the corporation in the suit to revive, and the circuit court necessarily adjudicated the then existence of the corporation in order to render a judgment against it), we shall confine our discussion to the sole question of whether or not the foreclosure sale on Feb. 7, 1938, was validly made by a legally appointed successor trustee. If this question can be answered in the affirmative, then it will be readily seen that the question of whether or not the sale under execution on the judgment was valid becomes immaterial, as does likewise the question of whether or not the principal complainants, Miss Martha C. Enochs, Mrs. Mary Enochs Nugent, Mrs. Edwina Enochs Flowers, Mrs. Lucy Enochs Robinson and Isaac C. Enochs, as stockholders and creditors of the Pearl Realty Company, and other stockholders and creditors on whose behalf the suit is brought, are the real parties in interest and the proper ones to maintain the suit in the place and stead of the mortgagor, Pearl Realty Company. Also, if the foreclosure is valid, we do not even reach the several other issues involved.

The Pearl Realty Company executed the bond mortgage in question on Nov. 1, 1931, to secure Series A Bonds or notes in the sum of $120,000, and Series B

Bonds or notes in the sum of $114,500, subject to a then existing and paramount deed of trust in favor of the Metropolitan Life Insurance Company in the sum of $225,000. The Series A Bonds or notes were to first be paid in full out of the proceeds of any foreclosure sale of the Tower Building under the bond mortgage before any part of such proceeds could be applied to the Series B Bonds or notes. The bonds or notes were all originally issued in favor of Enochs & Flowers, Ltd., and the Series A Bonds or notes were later pledged by the bond mortgage to the Interstate Trust & Banking Company in their full amount of $120,000 to secure an indebtedness of the Pearl Realty Company to the said bank, which was also named as trustee in the bond mortgage, as aforesaid. Therefore, an important fact is that the Interstate Trust & Banking Company was not a mere naked trustee at the time of the appointment of Myron Turfitt as successor trustee on March 4, 1937, and for the reason that the Series A Bonds had also been sold by an auctioneer on Dec. 24, 1936, to O. H. Pittman as nominee for the benefit of the said Interstate Trust & Banking Company.

Among other provisions, the bond mortgage contains the following: "In case of the Trustee's resignation, *incapacity* or *inability to act,* or its removal hereunder, then and in that event a successor may be appointed by the *holder* or holders *of not less than a majority in amount of all notes hereby secured and then outstanding* by an instrument or concurrent instruments under the hands and seal (if required) *of such holders of such notes and properly executed and recorded in the State of Mississippi,* provided in case of inability to agree upon such Trustee, the majority in amount then outstanding of series 'A' notes shall be vested with this power exclusively." (Italics ours.)

The original trustee did not resign as such, nor was it removed by any formal action in that behalf; in fact it was not removed as trustee at all, unless the fact of

its becoming insolvent and being placed in liquidation during the year 1934, together with the rendition of the orders or decrees of the Civil District Court of the Parish of Orleans, Louisiana, in which the liquidation of the original trustee bank was being administered, amounted to what may be termed a removal of the said trustee within the contemplation of law, governing a Louisiana banking institution, in liquidation.

But we go directly to the question of whether or not, under the facts and circumstances hereinafter stated, there was an "incapacity or inability to act" on the part of the said insolvent corporate trustee at the time of the appointment of Myron Turfitt as the successor trustee on March 4, 1937.

Act No. 300 of the Laws of the General Assembly of Louisiana in 1910, LSA-RS 6:383 et seq., provides, among other things, that "whenever the State Examiner of State Banks shall have reason to conclude after investigation that any such corporation (state banking association, savings bank or trust company) is in an unsound or unsafe condition to transact the business for which it was organized; or that it is unsafe, inexpedient or hazardous for it to continue business, then the State Examiner of State Banks with the consent and approval of the Governor wherever practicable may and is hereby authorized to close the bank forthwith and take possession of its books, property and affairs and retain such possession until its affairs are finally liquidated as hereinafter provided for, . . . . On taking such possession of (such) a corporation the State Examiner of State Banks *shall be authorized to perform any acts and to take such steps as may be necessary to conserve its assets,* and he shall proceed to liquidate its affairs as hereinafter set forth. He shall collect all moneys and claims belonging to it, and, on the order of the District Court of its domicile, may sell or compound all doubtful debts." (Italics ours.)

Thus, it will be seen that a mortgagor in this State when contracting a mortgage with a banking institution of Louisiana as beneficiary and trustee, is presumed to do so in recognition of the authority conferred by law on the state examiner of state banks in Louisiana to take possession of the property and affairs of such banking institution in the event of its insolvency and liquidation and to perform any acts and to take such steps as may be necessary to conserve its assets, including the bonds or notes secured by the mortgage, the situs of which as personal property before foreclosure is in that state where the mortgagee is domiciled, and the mortgagor is presumed to recognize the jurisdiction of the courts of that state to liquidate the affairs of the mortgagee, and is presumed to know that such jurisdiction and authority conferred by its laws will supersede any authority vested by the mortgage in such banking institution as beneficiary and trustee therein, in the event of insolvency and liquidation, and is also presumed to recognize, and to have contracted with reference to, the laws of that state and the jurisdiction of its state examiner of state banks and of its courts to provide for the substitution of a trustee to act in the place and stead of the insolvent banking institution in liquidation for the purpose of collecting its assets for the benefit of its creditors and stockholders; and that such insolvent beneficiary and trustee bank, in liquidation, could not act in such capacity without the consent of the state examiner of state banks and of the courts of Louisiana having charge of the liquidation proceedings.

Moreover, it seems clear from the provisions of the said Act No. 300, Laws of 1910 of Louisiana, that the provision that "the State Examiner of State Banks shall be authorized to perform any acts and to take such steps as may be necessary to conserve its assets" has the effect of vesting in said official a discretion and the exercise of his judgment in determining what steps may be necessary to conserve the insolvent bank's assets.

On Jan. 11, 1937, J. S. Brock, the official referred to in the said Act No. 300, Laws of 1910, wrote to the Interstate Trust & Banking Company, in liquidation, and, after fully identifying the bond mortgage in question, stated that "In view of the fact that the bank is now in liquidation under my supervision and control, by virtue of the provisions of Act 300 of 1910, 'I hereby forbid the bank to act in its capacity as trustee under the indenture (bond mortgage) and the supplemental agreement. Please govern yourselves accordingly.' "

We do not have the benefit of all the facts that may have governed the state examiner of state banks when he determined that it was necessary, in order to conserve the assets of the bank, that he should forbid it to act in its capacity as trustee under this bond mortgage. If the original trustee bank should have undertaken to conduct a foreclosure sale of the property, it would have been necessary that it should have done so through some of its trust officers or other officers or employees. Myron Turfitt was an assistant trust officer of said bank, and the state examiner of state banks had the right to recommend to the Civil District Court of Louisiana, in which the bank's affairs were being liquidated, but subject to the court's approval, his choice of a suitable employee of the bank or some other person to conduct such foreclosure.

On Jan. 13, 1937, there was filed on behalf of the said commissioner or examiner of state banks a petition in Civil District Court for the Parish of Orleans, Louisiana, and also on behalf of O. H. Pittman and Walter Cook Keenan, his Special Agents, and Chas. W. Hogan, Liquidator, who had been appointed under the provisions of the said Act 300, Laws of 1910, and which petition advised the said court of the action of the examiner of state banks in forbidding and prohibiting the Interstate Trust & Banking Company from acting in its capacity as trustee and recommended that the said court

enter an order setting forth whether or not the said trustee, then in liquidation, can or should act as trustee under the bond mortgage. Thereupon, there was duly entered an order by H. C. Cage, judge of the said district court, which recited that "the Interstate Trust & Banking Company, in liquidation, be and it is hereby forbidden and prohibited from acting as trustee" under the bond mortgage in question. This order is not shown to have been set aside, vacated or appealed from, and insofar as the record discloses is therefore still in force and effect.

The appointment of Myron Turfitt as successor trustee was executed by the Interstate Trust & Banking Company, in liquidation, the then *beneficial owner* of all the Series A Bonds, by J. S. Brock, said bank commissioner, Pittman and Keenan, Special Agents of the liquidation, Chas. W. Hogan, Liquidator, selected by the directors of the bank when placed in liquidation, and by O. H. Pittman, the *holder* of all the Series A Bonds as nominee of the said bank in liquidation; and the selection and appointment of the said Turfitt was with the approval of the Civil District Court.

Since the Civil District Court of the Parish of Orleans, in which the liquidation of the original trustee bank was being administered, and where the situs of the Series A Bonds and the mortgage was, as personal property before a foreclosure of the realty described therein, had full jurisdiction of the subject matter of the liquidation, including the bonds and mortgage, and of the said original trustee, this order of the court forbidding said insolvent trustee to act in such capacity was sufficient to require obedience thereto and to render such trustee incapacitated, and unable to act, since the collection of any indebtedness owing to the bank in liquidation was under the jurisdiction of the examiner of state banks, his assistants, and the liquidator in the liquidation proceedings, and of the Civil District Court.

It is to be conceded, as contended for by the appellants, that the weight of authority sustains the view that the insolvency of, or the appointment of a receiver for, a trustee does not ipso facto render such trustee incapacitated or unable to act as such, and especially unless the trustee is in charge of an active trust in administering an estate under a will or engaged in the collection of funds under a trust agreement for the benefit of creditors or the investment and reinvestment of funds entrusted to it as trustee thereof. It seems also that no distinction has been drawn between the status of an insolvent corporate trustee and an insolvent individual trustee where the only function to be performed by either is to make a sale under a foreclosure for the benefit of some third person. However, we are of the opinion that in the very nature of the case where an indebtedness is owing to a corporate creditor as beneficiary in the mortgage or deed of trust and such creditor is also named as trustee in the instrument to be foreclosed, the said insolvent institution, when placed in liquidation, would necessarily become incapacitated or unable to act as trustee in furtherance of the collection of its assets by a proposed foreclosure, since the receiver or liquidator of the corporate creditor would be entitled, and be charged with the duty, to collect all of its assets and administer the same for the benefit of all creditors and stockholders; and this would especially be true when a court of competent jurisdiction over the subject matter of the liquidation, which has territorial jurisdiction over the insolvent creditor and trustee, has by solemn order or decree forbidden the defunct corporation to act as trustee in the premises. No court would permit an involuntary bankrupt to proceed to collect by foreclosure of liens any indebtedness owing to him and administer the same to the displacement of the trustee in bankrupty, nor would any court of equity permit an insolvent debtor to proceed with the collection by foreclosure of indebtedness owing to him and to the displacement of the au-

thority of a receiver, whose duty it is to collect and conserve the assets for the benefit of all creditors.

As heretofore shown, it was the duty of the state examiner of state banks of Louisiana under the express provisions of Act 300, Laws of 1910, to take possession of all of the property of the insolvent Interstate Trust & Banking Company, including the Series A Bonds and the bond mortgage securing the same, and to retain the same until its affairs should become finally liquidated under the jurisdiction of the courts of Louisiana. Such right and duty of the said official is wholly inconsistent with the theory that the original trustee was capacitated and able to act as such at the time Myron Turfitt was appointed as successor trustee on March 4, 1937, after the liquidation proceedings had been in progress against the original trustee since the year 1934.

Aside from any other consideration, the original trustee could not act contrary to the mandate of the Civil District Court unless and until the order forbidding it to do so had become vacated. While not analogous on its facts, this Court held in Equitable Life Assurance Society v. Gex' Estate et al., 184 Miss. 577, 186 So. 659, that a temporary restraining order of the same Civil District Court of the Parish of Orleans, Louisiana, which forbade a certain course of action was not only binding upon the parties to the proceeding but that the same equally precluded others, who had knowledge of the order, from taking such course of action.

In the instant case, Mr. E. G. Flowers, President of the mortgagor, Pearl Realty Company, was a Director in the Interstate Trust & Banking Company, the beneficiary and original trustee in the mortgage, and the mortgagor through its president had known for nearly a year, by notice of record and otherwise, that Myron Turfitt had been appointed as successor trustee of the said banking institution in liquidation. The trial court would have been warranted in finding as a fact that Mr. Flowers was approached with reference to the proposed appoint-

ment of the successor trustee, before the appointment was made, and that the same met with his approval. Moreover, the Series B Bonds or notes, on Sept. 30, 1933, while then held by Enochs & Flowers, Ltd., were conveyed by said firm to the Jackson-State National Bank as trustee for the benefit of the creditors of the said transferror, in what was known as the "Jackson Pool Agreement", and of which trust the Interstate Trust & Banking Company was the largest beneficiary and creditor, holding $138,000.81 of indebtedness out of the total of $225,000 for the payment of which the trust was created. The principal complainants in the instant suit were partners in the firm of Enochs & Flowers, Ltd. and had individually executed the said trust agreement jointly with the firm.

The observations last above stated should be brought to bear on the question raised by the second paragraph of Section 4 of Article 8 of the bond mortgage hereinbefore quoted, which provides that "A successor (trustee) may be appointed by the holder or holders of not less than a majority in amount of all notes hereby secured and then outstanding . . . provided in case of inability to agree upon such trustee, the majority in amount then outstanding of Series 'A' notes shall be vested with this power exclusively." It is shown that O. H. Pittman, nominee for the benefit of the Interstate Trust & Banking Company, had, prior to the appointment of the successor trustee, acquired all of the Series A Bonds or notes amounting to $120,000, which constituted a majority in amount of both the Series A Bonds and the Series B Bonds, the latter being in the sum of $114,500.

For whatever it may be worth, the trust officer of the Jackson-State National Bank in charge of the assets of the "Jackson Pool Agreement", and to which bank the Series B notes had been conveyed as trustee, and who was administering the trust for the benefit of the creditors therein named, likewise consented to the appointment of the successor trustee. But the appellants, as

stockholders in the Pearl Realty Company, mortgagor in the bond mortgage, make the contention that there should have been an attempt on the part of the holder of the Series A Bonds to agree with the holder of the Series B Bonds upon the appointment of such successor trustee. Of this failure to attempt to agree on a successor trustee, neither the mortgagor nor Enochs & Flowers, Ltd., as payee, can complain, since they were not the holders of Series B Bonds when the successor trustee was appointed. However, the trustee in the "Jackson Pool Agreement" did agree to such appointment for whatever such agreement may be worth, as did likewise the President of the mortgagor, Pearl Realty Company, as aforesaid. And after the successor trustee, prior to the foreclosure under the bond mortgage, had made written demand in writing as such trustee upon the mortgagor for the payment of both the Series A and Series B Bonds, no objection was registered by the mortgagor to his capacity as such trustee to make such demand.

The present suit was filed on Feb. 5, 1948, two days before the completion of the bar of the ten-year statute of limitations, Sections 709-10-11, Code of 1942, as to the appellee Mississippi Tower Building, Inc., and under the facts of the case the same is not barred by laches. As to whether or not there was a ratification by the holder of the Series B Bonds of the appointment of the successor trustee, we deem it unnecessary to decide because we have reached the conclusion that under all of the facts and circumstances hereinbefore stated, there was "incapacity" and "inability" on the part of the original trustee to act as such in the foreclosure.

Lastly, on the question of the validity of the foreclosure, involving as it does the regularity or legality alone of the appointment of the successor trustee for that purpose, the appellants contend that the appointment was void for the reason that said Section 4, Article 8 of the bond mortgage required that the instrument should have been both "properly executed and recorded in the

State of Mississippi", whereas the same was not both executed and recorded in Mississippi but was properly executed in New Orleans, Louisiana, and then recorded in Mississippi. Our opinion as to this contention is that the words "properly executed" meant that a properly executed instrument was required, the words "properly executed" referring to the character of instrument thereinabove mentioned, and that the words "recorded in the State of Mississippi" have reference to where such an instrument should be placed of record, after being "properly executed."

It follows that we are therefore of the opinion that the bond mortgage was legally foreclosed, and that the fee simple title of the Tower Building property was acquired from the purchaser by the Mississippi Tower Building, Inc., through mesne conveyances, and that the trial court committed no error in confirming its title thereto. Therefore, the decree dismissing the bill of complaint, and in all other respects, is hereby affirmed.

Affirmed.

**Ethridge, C.,** took no part in this decision.