Rel: January 10, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2024-0546

————————————————

**Ex parte Steve Marshall, in his official capacity as Attorney General of the State of Alabama**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Megan Carmack and Leigh Gulley Manning, individually and on behalf of minor children, Michaelyn Leigh Manning and Michael Sanders Manning**

**v.**

**Regions Bank, in its fiduciary capacity as trustee of the Mabel Amos Memorial Fund, et al.)**

**(Montgomery Circuit Court: CV-22-900830)**

**and**

**(In re: Tyra Lindsey, a minor, by and through her mother and guardian, Denese Rankin; and Steve Marshall, in his official capacity as Attorney General of the State of Alabama**

**v.**

**Regions Bank, in its fiduciary capacity as trustee of the Mabel Amos Memorial Fund, et al.)**

**(Montgomery Circuit Court: CV-23-900219)**

PER CURIAM.

This is the second time that a mandamus petition has been filed in these cases, which were consolidated in the Montgomery Circuit Court ("the circuit court") below. See Ex parte Marshall, [Ms. SC-2023-0894, May 31, 2024] __ So. 3d __ (Ala. 2024). These proceedings involve the Mabel Amos Memorial Fund ("the trust"), which is a charitable trust created by the will of Mabel S. Amos ("Amos"). Generally, the trust was created for the purpose of providing financial assistance to beneficiaries -- which are chosen at the discretion of the board members of the trust through an application process -- desiring to obtain higher education. The plaintiffs in the underlying actions -- Megan Carmack and Leigh Gulley Manning ("Leigh"), individually and on behalf of Carmack's minor

children, Michaelyn Leigh Manning, and Michael Sanders Manning, and Tyra Lindsey, a minor, by and through her mother and guardian, Denese Rankin ("Lindsey") -- have alleged in the circuit court that the trustee and board members of the trust breached their fiduciary duties in various respects and commenced the underlying actions in an effort to, among other things, remove the trustee and the board members, have a new trustee and new board members appointed, and restore the allegedly misappropriated assets of the trust. The circuit court appointed a special master under Rule 53, Ala. R. Civ. P., and referred the entirety of the underlying actions to the special master. The circuit court also appointed James C. White, Sr., C.P.A., to aid the special master in providing an accounting of the trust.

The first time these cases were before us, Attorney General Steve Marshall ("Marshall"), who was added as a party to the underlying cases, petitioned this Court for writs of mandamus directing the circuit court to vacate its order appointing a special master and referring the entirety of the cases to the special master. We granted Marshall's mandamus petitions and ordered the circuit court to vacate its order appointing a special master and referring the cases to him.

3

Facts and Procedural History

The facts and procedural history are set forth in full in Ex parte Marshall. Amos's will directed that, upon her death, certain proceeds of her estate be used to establish the trust. Amos died in 1999, and, after her estate was probated, the corpus of the estate was distributed to create the trust in 2002. Regions Bank served as the trustee of the trust and administered it in conjunction with the trust's board. At times relevant to these proceedings, the following individuals served as board members of the trust: Thomas Albritton, Rick Clifton, John Bell, and Drew McNees ("the board members"). According to Amos's will, "[t]he net income from the trust fund after payment of all costs of administration shall be expended to fund or to provide scholarships for deserving young men and women of this State, and to assist them in attending any educational institution." Amos's will stated that the trustee is to make distributions from the trust at the direction of the trust's board and that the trustee "shall not engage in any act of self-dealing …."

According to the pleadings filed below, the trust did not initially have substantial income. However, in 2011, oil was discovered on a piece of property held by the trust, and the income of the trust substantially

increased. From that time forward, the pleadings allege, Regions Bank and the board members breached their fiduciary duties in various respects by, allegedly, charging excessive fees and making distributions contrary to the terms of the trust. As a result, the plaintiffs commenced the underlying actions, which were eventually consolidated, in an effort to, among other things, remove the trustee and the board members, have a new trustee and new board members appointed, and restore the allegedly misappropriated assets of the trust. Marshall filed a motion to intervene in one of the consolidated actions (he had been named as a defendant in the other consolidated action and later had been realigned as a plaintiff), which we explained in Ex parte Marshall, as follows:

"On March 9, 2023, Marshall filed a motion to intervene in [one of the consolidated cases]. Citing § 19-3B-110,[ Ala. Code 1975,] Marshall argued that he, as the attorney general, has the rights of a qualified beneficiary of the trust and, thus, has standing to enforce the terms of the trust. The circuit court granted Marshall's motion to intervene ….

"On April 4, 2023, … Marshall filed a complaint against Regions Bank and the board members. Marshall alleged:

"'8. Regions [Bank] and the board members, jointly, and severally and separately, engaged in acts of self-dealing, or breached their fiduciary and other duties to the trust by failing to prevent or prohibit self-dealing, or by permitting and acquiescing in self-dealing, and engaging in other

5

acts and omissions in violation of statutory and common law duties owed to the trust.

"'9. By way of example only, and without limitation, Albritton self-deal [sic], personally profited or gained from the [trust] in violation of the [trust] terms, the Alabama Uniform Trust Code, common law, and relevant Internal Revenue Service rules and regulations. [Regions Bank] and the board [members], jointly and severally, impermissibly awarded scholarships or grants to Albritton's children, and paid or caused to be paid scholarships or grant money from the [trust] totaling $135,000 for his children to attend college at the University of Texas at Austin.

"'10. These scholarship or grant awards are impermissible actions by the board members and [Regions Bank] that violate the terms of the trust, are prohibited self-dealing and private inurements, and breaches of fiduciary duties owed by [Regions Bank] and [the] board members ....

"'11. Without limitation, [Regions Bank], and board members Thomas Albritton, John Bell, Rick Clifton, and or Drew McNees, jointly, or separately and severally, breached their duties owed to the trust, including fiduciary, [common-law] and or statutory duties, to prevent [the] board members from engaging in acts of self-dealing and granting themselves benefits for personal gain.'

"Marshall asserted against Regions Bank and the board members claims of breach of fiduciary duties, unjust enrichment, negligence, wantonness, and violation of Alabama's Uniform Trust Code, § 19-3B-101 et seq., Ala. Code 1975, as well as a claim seeking an accounting. Marshall requested compensatory and punitive damages, an

accounting of the assets and investments of the trust, as well as an accounting of the fees paid by the trust, and an injunction against Regions Bank

> "'enjoining [it] from committing further breaches of [the] trust (Ala. Code § 19-3B-1001[(b)](2)(1975)); compelling Regions [Bank] to redress the breaches of trust [pleaded] above by paying money to the trust (Ala. Code § 19-3B-1001[(b)](3)(1975)); ordering an accounting of the trust (Ala. Code § 19-3B-1001[(b)](4)(1975)); appointing a special fiduciary to take possession of the trust property and administer the trust (Ala. Code § 19-3B-1001[(b)](5)(1975)); remove [Regions Bank from the position of trustee] for those reasons set forth in Ala. Code § 19-3B-706 (1975), including the fact that Regions [Bank] has committed or allowed to be committed a serious breach of trust; and that Regions [Bank] has failed persistently to administer the trust (Ala. Code § 19-3B-1001[(b)](9) (1975)).'"

Ex parte Marshall, ___ So. 3d at ___.

Eventually, the circuit court entered an order appointing a special master under Rule 53. The circuit court's order stated, in pertinent part:

> "'It has become apparent that the appointment of a Special Master is necessary to hear pending motions and other matters and make recommended orders. Pursuant to Rule 53, A[la]. R. Civ. P., it is hereby ORDERED that JUDGE CHARLES PRICE is appointed Special Master to hear all matters in the above-styled case.

> "'In addition, JAMES C. WHITE, SR., CPA, ... is appointed to review all matters associated with accounting, computation, examination of books and records relating to the

trust, as those issues shall be further identified and defined by the Special Master upon review of the pleadings and upon hearing the parties' dispositive motions, all as provided by the law of Alabama governing the administration of trusts.

"'The Special Master shall have the rights, powers, and duties provided in Rule 53 and may adopt such procedures as are not inconsistent with that rule, with the law of Alabama governing the administration of trusts and with this or other orders of the court.

"'The Special Master shall make findings of fact, as necessary, and shall recommend conclusions of law with respect to matters presented by the parties, including a recommended conclusion of law as to which purported plaintiffs have standing to bring claims in this matter, and [he] shall report such findings of fact and such recommended conclusions of law expeditiously to the court.

"'Compensation at rates mutually agreeable to the Special Master and the parties shall be paid from the ... trust to the Special Master and Accountant on a monthly basis, together with reimbursement for reasonable expenses incurred by the Special Master. If the parties and the Special Master or Accountant are unable to agree upon the compensation, it shall be fixed by the court. The Special Master and Accountant shall, within five (5) days, inform the court if he and the parties have agreed upon [his] compensation.'"

Ex parte Marshall, __ So. 3d at __ (capitalization in original).

Marshall petitioned this Court for writs of mandamus ordering the circuit court to vacate its order. We granted Marshall's petitions, concluding:

8

"In summary, the circuit court's order referring all matters in these cases to a special master exceeded its discretion. As to the referral of the matters to be tried without a jury, the circuit court did not indicate that an 'exceptional condition' necessitated the referral. See Rule 53(b)[, Ala. R. Civ. P.]. As to the referral of the accounting, the circuit court did not indicate that the accounting would prove complicated in some way, and, even if the accounting was properly referred to a special master, the referral of an accounting does not justify the referral of all the other matters in the cases. Accordingly, we grant Marshall's petitions and order the circuit court to vacate its … order referring the cases to a special master."

Ex parte Marshall, __ So. 3d at __. This Court issued its decision in Ex parte Marshall granting Marshall's petitions on May 31, 2024. On June 3, 2024, Lindsey filed an application for rehearing.

While the application for rehearing was pending in this Court, the circuit court vacated its order appointing a special master and referring the entirety of the underlying cases to the special master. The circuit court then scheduled a hearing to occur on July 11, 2024, to hear arguments from the parties and to determine how to proceed in light of this Court's decision in Ex parte Marshall. On July 5, 2024, before the hearing, Lindsey provided the circuit court with numerous tax filings from previous years that had been filed by the trust with the Internal Revenue Service; those documents were in addition to other of the trust's

9

tax documents that Lindsey had previously provided. Also on July 5, 2024, Lindsey filed with the circuit court a proposed order that, if adopted, would appoint White as a special fiduciary of the trust under § 19-3B-1001(b), Ala. Code 1975. Under Lindsey's proposed order, White would, among other things, take possession of the assets of the trust, administer the trust pending the circuit court's consideration of whether to remove the trustee and the board members of the trust, conduct a full accounting of the trust, and make a determination as to whether Regions Bank had breached its duties as the trustee of the trust.

On July 11, 2024, the circuit court held the scheduled hearing. Although we do not have a transcript of the hearing, Lindsey states that, at the conclusion of the hearing, the circuit court invited the parties to submit further written arguments on the appointment of a special fiduciary. On July 25, 2024, the parties filed their requested argument. Marshall argued that the appointment of a special fiduciary under § 19-3B-1001(b) is essentially the same thing as the appointment of a special master under Rule 53, characterizing Lindsey's request for the appointment of a special fiduciary as a "change[-]of[-]verbiage gimmick." Specifically, Marshall argued that Lindsey's request that White be

ordered to conduct a full accounting of the trust and to determine whether Regions Bank had breached its duties as trustee is exactly the kind of order that this Court directed be vacated in Ex parte Marshall.

Lindsey argued that it is within the circuit court's discretion under § 19-3B-1001(b) to appoint a special fiduciary to take possession of the trust property and administer the trust and to order an accounting. Moreover, Lindsey argued, Marshall, in the complaint that he had filed against Regions Bank, a summary of which is set forth above, had previously requested that the circuit court appoint a special fiduciary to take possession of the trust property and administer the trust and to order an accounting. Lindsey further discussed the differences between the appointment of a special master under Rule 53 and the appointment of a special fiduciary under § 19-3B-1001(b) and argued that this Court's decision in Ex parte Marshall did not prohibit the circuit court from appointing a special fiduciary under § 19-3B-1001(b).

On August 8, 2024, the circuit court entered the following order appointing White as a special fiduciary of the trust:

> "1. The court has before it the tax filings (Form 990-PF's) by the Mabel Amos Memorial Fund ('Trust') for the years 2002-2022 and a verified copy of the Last Will and Testament and Codicil of Mabel S. Amos, which contains the terms of the

… []Trust[]. These documents were proffered by Petitioner, Tyra Lindsey.

"2. The Trust's tax filings were sworn by the Trust to contain true and accurate information concerning the Trust's disbursements and other operations. They were filed by the Trust under oath with the Internal Revenue Service. These records thus contain information whose accuracy cannot reasonably be questioned and are hereby judicially noticed pursuant to Rule 201, Ala. R. Evid.

"3. The information contained in the Trust's tax filings disclose that the Trust distributed $135,000 in scholarship funds to the children of Thomas Albritton, a trustee of the Trust. These disbursements clearly violated the Trust's prohibition on private inurement and self-dealing on the part of the trustees, set forth in Article V, part E of the Trust. The tax filings also reveal that the trustees distributed Trust funds directly to third parties that were not 'young men and women of the State' as required by the Trust. The tax filings indicate that in some cases these distributions were not for scholarships, but 'general purposes'; in other cases, where the disbursements went to universities and foundations to create scholarship funds at their respective institutions, the scholarship recipients would be chosen by individuals other than the Board Members of the Trust, a violation of the explicit terms of the Trust.[1]

"4. In addition to the improper scholarship awards to non-individuals, it has been specifically and credibly alleged that the Trust awarded scholarships to individuals who were explicitly identified by Petitioner Lindsey as being the children and grandchildren of staff members of the trustees' law firm, to the child of a former partner and judge before whom the trustees practiced law, and to the children of wealthy clients of their law firm. These scholarships would have served to benefit personally the trustees and would constitute a violation of the private inurement provisions of

12

Article V, part E of the Trust. The extent of these improper disbursements is not currently ascertainable as, unlike the scholarship awards to Thomas Albritton's children and to the third-party entities, they have not been disclosed in the Trust's tax filing.

"5. The Trust's tax filings also indicate that after the Trust became wealthy from oil revenue in 2010, Regions Bank greatly increased its charges to the Trust for its administrative services although it spent the same amount of time working on Trust matters both before and after the Trust became wealthy.

"6. All parties seeking to remove the trustees in this case have requested that this court appoint a Special Fiduciary to administer the Trust and that the Special Fiduciary perform an accounting. This includes the Alabama Attorney General, Tyra Lindsey, and Megan Carmack/Leigh Manning.

"7. Alabama's Uniform Trust Code provides that this court may intervene in the administration of a trust when invoked to do so by an 'interested person.' Ala. Code [1975, §] 19-3B-201(a). Additionally, Ala. Code [1975, §] 19-3B-706(a) provides that a 'settlor, a co-trustee, or a beneficiary' may request that a court remove a trustee, or that the court on its own initiative may remove a trustee, and thereafter order further relief pursuant to Ala. Code [1975, §] 19-3B-1001(b).

"8. The Supreme Court decided in this case that this court had subject matter jurisdiction over the Trust. … The Supreme Court did not decide the issue of whether Lindsey and Carmack/Manning had standing to also invoke the court's jurisdiction, nor did it decide what role they would have in the litigation. … At this point in the litigation, it is unnecessary to decide the issue of standing of Lindsey and Carmack/Manning, as their presence adds no more additional authority to the court than it already has to intervene in the administration of the Trust, and neither Lindsey nor

13

Carmack/Manning are seeking any personal claim in this matter.

"9. The Supreme Court's decision came after this court entered an Amended Order Appointing a Special Master …. This referral order appointed Ret. Circuit Judge Charles Price as a Special Master, to be assisted by an accountant, James White, CPA. The Supreme Court vacated this Amended Order, holding that it did not comply with the requirements of Ala. R. Civ. P., Rule 53 that concerns the appointment of Special Masters. …

"10. Having subject matter jurisdiction in this matter, the court has authority under Ala. Code [1975, §] 19-3B-1001(b)(5) to appoint a special fiduciary 'to take possession of the trust property and administer the trust,' and under subpart (b)(4) to 'order a trustee to account.' Under Ala. Code [1975, §] 19-3B-706(c), the appointment of a special fiduciary may be made, 'pending a final decision on a request to remove a trustee.' This authority to appoint a Special Fiduciary is in addition to, and an alternative to, the appointment of a Special Master.

"11. Rather than appoint a Special Master bound by Rule 53 to make findings only on specifically delegated matters, the court has decided to appoint a temporary Special Fiduciary under Ala. Code [1975, §] 19-3B-1001(b) to take possession of the trust property and administer the Trust pending a final decision on the removal of the trustees, and to conduct an accounting of the Trust's books and records for purposes of determining the full extent of the trustees' breaches.

"12. There are several bases for this decision. First, it is impossible to determine at this point the extent of the trustees' breaches of duty, as only the tip of an apparent iceberg of impropriety can be seen. Second, having a Special Fiduciary take possession of the records of the Trust would be

14

superior to identifying in a referral order the specific facts that a Special Master would be limited to addressing. Doing the latter would limit the inquiry into the trustees' potential misconduct to a 'laundry list' that would not include improper scholarship awards and other disbursements not yet known.[4] The court takes note that the Trust's tax filings reveal that prior to 2014, the Trust disclosed the names of its scholarship recipients, but beginning in 2014 the trustees did not disclose these names. This failure to reveal the identity of the recipients of the scholarship awards beginning in 2014 allows the inference that it was done for the purpose of impeding any discovery of improper awards. Whether intended or not, this failure to disclose the recipients had the effect of preventing the identification of improper awards without judicial intervention.

"13. Further, the Attorney General and trustees previously announced to the court a proposed settlement 'in principle,' but no terms of any proposed final settlement have been filed with or otherwise tendered to the court. A determination by a Special Fiduciary of the extent of the trustees' breaches of duty would help inform the court's decision whether to approve any proposed settlement or order other relief, as well as prevent any additional breaches in the interim.

"14. An appointment of a Special Fiduciary rather than the referral to a Special Master would also best serve to protect the sensitive financial and personal information of the scholarship applicants, recipients, and their families, as these records would remain in the possession of the Trust.

"IT IS THEREFORE ORDERED:

"15. James C. White, Sr., CPA, of Birmingham, Alabama, … is hereby appointed as a Special Fiduciary to the Mabel Amos Memorial Fund pending the final outcome of the court's decision as to whether to remove the current trustees.

"16. As a temporary Special Fiduciary, Mr. White shall take possession of the property of the Trust, including its books and records, and administer the Trust until further order of the court. Mr. White shall have all the authorities and powers that the Trust instrument provides to the current trustees, and he shall be compensated by the Trust in an amount reasonable under the circumstances, subject to the court's review and approval.

"17. The temporary Special Fiduciary is directed to audit the books and records of the Trust to determine the monetary amount, if any, of all disbursements made by the trustees, including both scholarships and other disbursements, that were in violation of the terms of the Trust. This accounting shall also include the amount of net income, if any, the trustees may have improperly diverted to the Trust's principal instead of using these funds to provide scholarships as required in accordance with Article 5 of the Trust. This accounting shall further include the amount of fees, if any, charged by the current administrative trustee, Regions Bank, that were not 'reasonable under the circumstances,' as required by Ala. Code [1975, §] 19-3B-708(a). If the Special Fiduciary determines that there were trustee fees charged to the Trust that were not reasonable under the circumstances, he shall set forth the methodology he used to make that determination, and the amount considered unreasonable. The temporary Special Fiduciary shall also recommend to this court whether the breaches, if any, discovered by his accounting constitute a 'serious breach of trust' within the meaning of Ala. Code [1975, §] 19-3B-706(b)(1), making them of sufficient gravity to remove the trustees.

"18. The temporary Special Fiduciary shall commence his duties forthwith and shall submit his accounting back to this court within 90 days, unless this deadline is extended by this court.

16

"19. Upon receipt of the temporary Special Fiduciary's accounting, this court shall conduct further proceedings to determine if the current trustees of the Trust should be removed and whether the court should order the trustees to make monetary recompense to the Trust, and whether attorney fees and other relief are appropriate.

"_____

"[1]According to the Trust's Form 990-PF's, the Trust in 2012 distributed funds to LBW Jr. College, Troy University, and the University of Alabama (UA), and in 2013 made distributions to UA and the Auburn University Foundation (AUF) for 'general support.' Article V, part B of the Trust requires that the income of the Trust must be used only '… to provide scholarships for deserving young men and women of this State….' The Trust in each year from 2004-2008 distributed funds to the 'general scholarship fund' of AUF. Commingling Mabel Amos Trust funds with a university's general scholarship fund makes it impossible to know who received Mabel Amos Trust scholarships and whether these individuals met the specific criteria for an award of a scholarship required by the Trust. Similar distributions appear to have been made to UA and AUF from 2014-2016, and again to AUF in 2019. In 2018, the Trust distributed funds to the Crimson Tide Foundation to create an endowed athletic scholarship at UA, and in 2019 and again in 2021 distributed additional funds directly to UA for this athletic scholarship. Under Article V, part C of the Trust, scholarships must be awarded only to 'young men and women of the state,' who are selected by the Board established by the Trust. Individuals who are not Board Members of the Trust are not allowed to determine the recipients of the scholarships. When combined with the funds distributed for 'general support' purposes, these distributions appear to amount to $374,157 (as best as the court can ascertain) and are in addition to the $135,000 awarded to the children of trustee Thomas Albritton.

17

"….

"[4]The Trust's Form 990-PF's contain information concerning Regions' trustee fees. Other than being able to observe that the fees skyrocketed after the Trust became wealthy, it is impossible to determine the basis that Regions used in making these charges, as there appears to be no consistent basis on either an hourly rate or a percentage of net assets that Regions used in charging its fees to the Trust."

(Some footnotes omitted; capitalization in original.)

On August 23, 2024, this Court overruled the application for rehearing that had been filed in Ex parte Marshall and issued a certificate of judgment in that case. On August 28, 2024, Marshall petitioned this Court, seeking a writ of mandamus ordering the circuit court to vacate its August 8, 2024, order appointing a special fiduciary.

Standard of Review

The applicable standard of review in this case is the same as it was in Ex parte Marshall, __ So. 3d at__:

"This Court set forth the following applicable standard of review in Ex parte Alabama State Personnel Board, 54 So. 3d 886, 891 (Ala. 2010):

"'"'"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the

respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."'"

"'Ex parte Novartis Pharm. Corp., 975 So. 2d 297, 299 (Ala. 2007) (quoting Ex parte Perfection Siding, Inc., 882 So. 2d 307, 309-10 (Ala. 2003), quoting in turn Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995)).

"'"'"In cases involving the exercise of discretion by an inferior court, [the writ of] mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion, except in a case [where the trial court has exceeded its discretion]."'" Ex parte Monsanto Co., 794 So. 2d 350, 351-52 (Ala. 2001) (quoting Ex parte Auto-Owners Ins. Co., 548 So. 2d 1029, 1030 (Ala. 1989), quoting in turn Ex parte Edgar, 543 So. 2d 682, 685 (Ala. 1989)).'"

Discussion

First, Marshall argues that the circuit court's August 8, 2024, order appointing a special fiduciary is void for lack of jurisdiction because, Marshall argues, the cases were still pending before this Court at the time that the circuit court entered that order. As noted above, our opinion in Ex parte Marshall was released on May 31, 2024, and Lindsey filed an application for rehearing with this Court on June 3, 2024. The circuit court entered its August 8, 2024, order while Lindsey's application

19

for rehearing was pending before this Court. This Court then overruled Lindsey's application for rehearing on August 23, 2024. Marshall argues that jurisdiction over the underlying cases rested solely with this Court while Lindsey's application for rehearing was pending and that the circuit court "had no jurisdiction" to enter the August 8, 2024, order appointing a special fiduciary until this Court ruled on Lindsey's application. Marshall is incorrect.

Marshall's argument, which relies upon Gordon v. State, 710 So. 2d 943 (Ala. Crim. App. 1998), is based on the following general principle of law pertaining to jurisdiction as set forth in Gordon:

> "'"The rule has been stated many times that when an appeal is taken the trial court may proceed only in matters entirely collateral to that part of the case which has been taken up by the appeal, but can do nothing in respect to any matter or question which is involved in the appeal, and which may be adjudged by the appellate court.... This is an application of the general rule that jurisdiction of a case can be in only one court at a time.' Foster v. Greer & Sons, Inc., 446 So. 2d 605, 608 (Ala. 1984) (citations to authority omitted); Sunshine Homes, Inc. v. Newton, 443 So. 2d 921, 924 (Ala. 1983). "After an appeal is taken, the court whence it came loses control of the subject matter or question in the case made the subject of the order, judgment, or decree from which the appeal is taken. Action in said cause should be suspended in the trial court until the appeal is

effectively abandoned, dismissed, or decided." Lewis v. Martin, 210 Ala. 401, 409, 98 So. 635 (1923); Ex parte Pugh, 441 So. 2d 126, 127 (Ala. 1983). "The basic principle is that a case should not be pending in a lower and an appellate court at the same time." Walker v. Alabama Public Service Commission, 292 Ala. 548, 552, 297 So. 2d 370 (1974).

"'....

"'Because the circuit court was without jurisdiction, its judgment is null and void and will not support an appeal. Jones v. Sears Roebuck & Co., 342 So. 2d 16, 17 (Ala. 1977). Therefore, this appeal must be dismissed. See State v. Crook, 123 Ala. 657, 27 So. 334 (1899).'

"[McKinney v. State,] 549 So. 2d [166,] 167-68 [(Ala. Crim. App. 1989)] (footnote omitted)."

710 So. 2d at 945.

That general rule, however, applies when an appeal is taken from a lower court to an appellate court; it does not apply when, as here, a petition for a writ of mandamus is filed with an appellate court seeking review of an interlocutory order entered by a lower court. In Ex parte Marshall County Department of Human Resources, 252 So. 3d 1105, 1107 n.2 (Ala. Civ. App. 2017), the Court of Civil Appeals provided the following explanation of the effect on a lower court's jurisdiction when a

21

notice of appeal is filed versus when a petition for a writ of mandamus is

filed:

> "Indeed, the filing of a notice of appeal divests the trial court of jurisdiction over an action. <u>Portis v. Alabama State Tenure Comm'n</u>, 863 So. 2d 1125, 1126 (Ala. Civ. App. 2003) (quoting <u>Ward v. Ullery</u>, 412 So. 2d 796, 797 (Ala. Civ. App. 1982))('It is well settled that "[o]nce an appeal is taken, the trial court loses jurisdiction to act except in matters entirely collateral to the appeal." '); <u>see also</u> <u>Veteto v. Yocum</u>, 792 So. 2d 1117, 1119 (Ala. Civ. App. 2001) (explaining that, once an appeal is taken, a trial court may not enter a judgment or order in an action until such time as the appellate court issues its certificate of judgment). <u>However, the filing of a petition for the writ of mandamus, unlike the filing of a notice of appeal, does not remove jurisdiction over the underlying action from the trial court</u>. <u>State v. Webber</u>, 892 So. 2d 869, 871 (Ala. 2004) ('The filing of a petition for a writ of mandamus against a trial judge does not divest the trial court of jurisdiction, stay the case, or toll the running of any period for obeying an order or perfecting a filing in the case.')."

(Emphasis added.) Marshall's argument is not persuasive; the circuit

court had jurisdiction to enter its August 8, 2024, order appointing the

special fiduciary because the filing of Marshall's previous mandamus

petitions with this Court did not divest the circuit court of jurisdiction

over the underlying cases.

As another preliminary consideration, we note that the parties have

raised the issue of standing before the circuit court and before this Court,

as they did in <u>Ex parte Marshall</u>. Of course, in <u>Ex parte Marshall</u>, we

22

explained that the circuit court has subject-matter jurisdiction over the underlying consolidated cases because "Marshall properly invoked the jurisdiction of the circuit court by filing a complaint in the consolidated cases below, and the circuit court has properly assumed control of the trust." __ So. 3d at ___. Now, the parties have again presented arguments concerning whether Carmack, Leigh, and Lindsey have "standing" to assert their claims against Regions Bank and the board members. We decline to answer that question for the same reason as before:

> "We acknowledge that the parties have also raised arguments as to the 'standing' of Carmack, Leigh, and Lindsey to assert their claims against Regions Bank and the board members. We need not address that question, however, because we have already determined that the circuit court has jurisdiction over the cases below based on Marshall's pleadings, and, thus, we are certain that we have jurisdiction to consider Marshall's mandamus petitions pertaining to the circuit court's order appointing a special master. In other words, because the circuit court had subject-matter jurisdiction over the cases at the time that it entered its November 20, 2023, amended order appointing a special master, that order was not void and, thus, is capable of supporting Marshall's mandamus petitions. Cf. Brooks v. Carter, 390 So. 3d 1098, 1102 (Ala. Civ. App. 2023)('[W]hen a circuit court without subject-matter jurisdiction purports to enter any judgment other than one dismissing the action for lack of jurisdiction, that judgment is void and will not support an appeal. See Singleton v. Graham, 716 So. 2d 224, 226 (Ala. Civ. App. 1998). Instead, that judgment must be vacated or

23

set aside and the appeal must be dismissed. <u>Singleton</u>, <u>supra</u>; <u>Bernals[, Inc. v. Kessler-Greystone, LLC</u>, 70 So. 3d 315, 319 (Ala. 2011)].'). The circuit court may still consider the arguments raised by the parties related to whether Carmack, Leigh, and Lindsey have 'standing' or if they have failed to state a claim. See <u>Ex parte BAC Home Loans Servicing, LP</u>, 159 So. 3d 31 (Ala. 2013)(discussing the difference between standing and whether a party has failed to properly state a cause of action)."

<u>Ex parte Marshall</u>, __ So. 3d at __ n.1. The circuit court has jurisdiction over the cases below based on Marshall's pleadings, and, thus, we need not decide the issue of "standing" as to Carmack, Leigh, or Lindsey in order to decide the mandamus petition currently before us.

Next, we will consider the merits of Marshall's arguments pertaining to whether the circuit court exceeded its discretion in appointing White as a special fiduciary in these consolidated cases. As noted above, the circuit court initially appointed a special master in these cases under Rule 53 and referred the entirety of the cases to him under Rule 53(b). Pertinent to the current mandamus petition, however, the circuit court appointed White as a special fiduciary under § 19-3B-1001. In his petition before this Court, Marshall argues that, even though the circuit court purported to appoint White as a special fiduciary under § 19-3B-1001, "the appointment is nothing more than the warmed-over

[Rule 53] special master order already stricken by this Court." Marshall's petition at 4. Marshall argues that the circuit court has "appoint[ed] … White … as special master <u>again</u> …." <u>Id.</u> at 3 (emphasis in original). Based on that premise -- that the circuit court's present order is one appointing a special master under Rule 53 and referring the case to the special master thereunder -- Marshall argues that this Court's decision in <u>Ex parte Marshall</u> controls and, based thereon, that the circuit court exceeded its discretion in appointing White as a special master under Rule 53.

As noted, the entire premise of Marshall's argument is that the circuit court's present order is an order appointing White as a special master under Rule 53 and a referral of the entirety of the cases to him. We do not agree entirely with that premise. Marshall's argument glosses over the fact that there is a distinction between an appointment of a special master under Rule 53 and an appointment of a special fiduciary under § 19-3B-1001. Marshall's argument does not delve into any such distinction and, unfortunately, provides only a passing citation to § 19-3B-1001, offering no discussion or analysis of that statute or how it

25

compares and/or relates to Rule 53. Marshall's argument is lacking in that regard.

Under Alabama law, there is a distinction between the appointment of a special master under Rule 53 and the appointment of a special fiduciary under § 19-3B-1001. First, we will consider the purpose and application of Rule 53, which we discussed extensively in Ex parte Marshall. In that case, Marshall convincingly argued that the circuit court had exceeded its discretion by appointing a special master and referring the entirety of the cases to him. We addressed Marshall's argument pertaining to Rule 53 as follows:

> "In Ex parte Alabama State Personnel Board, 54 So. 3d [886,] 892-93 [(Ala. 2010)], this Court set forth the following relevant law concerning Rule 53:
>
> > "'Rule 53, Ala. R. Civ. P., provides that a court may appoint a special master. Rule 53(b), Ala. R. Civ. P., sets out the occasions upon which the appointment of a special master is appropriate and provides as follows:
> >
> > > "'"(b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made

26

only upon a showing that some exceptional condition requires it."

"'The appointment of a special master lies within the sound discretion of the trial court, and its decision to appoint a special master should not be reversed unless the trial court clearly exceeds that discretion. Hall v. Mazzone, 540 So. 2d 1353 (Ala. 1988). In a jury trial, a case should be referred to a special master only if the issues are "complicated"; those matters to be tried without a jury are to be referred to a special master only upon finding of "some exceptional condition" requiring such referral, unless a claim requires an accounting or a difficult computation of damages. We emphasize the sentence in Rule 53(b) that precedes the applicable standard (jury or nonjury) that tells us that the reference to a special master is the exception not the rule. "Because of the increased costs, likelihood of delay, and possible lack of confidence in the outcome, the power to order a reference is to be sparingly exercised. See Adventures in Good Eating, Inc. v. Best Places to Eat, Inc., 131 F.2d 809, 815 (7th Cir. 1942)." Committee Comments on 1973 Adoption of Rule 53.'

"As is clear from the above-quoted legal principles, different standards apply in determining the appropriateness of referring to a special master actions to be tried with a jury, actions to be tried without a jury, and actions seeking an accounting. Accordingly, to properly determine if the circuit court's referral of all the matters in these cases to a special master was appropriate, we must first determine whether the cases were to be tried by a jury or not, and we must also determine whether an accounting has been requested. We can then analyze the circuit court's referral under the applicable standards.

27

"… Based on our review of the pleadings and the parties' assertions before this Court, it appears that the actions below are to be tried without a jury. The claims asserted by Marshall against Regions Bank and the board members in his complaint alleged breach of fiduciary duties, unjust enrichment, negligence, wantonness, and violation Alabama's Uniform Trust Code. Therefore, insofar as the circuit court referred to the special master those matters to be tried without a jury, 'those matters ... are to be referred to a special master only upon finding of "some exceptional condition" requiring such referral ....' Ex parte Alabama State Pers. Bd., 54 So. 3d at 892-93.

"In the present cases, the circuit court did not indicate that 'some exceptional condition' required the referral of the entire cases to a special master. In fact, the circuit court's order makes no mention of the necessity of such a finding to justify the referral of the entire cases to a special master. The allegations in Marshall's complaint are straightforward and easily understandable. Our review of the materials submitted by the parties do not indicate that any such 'exceptional condition' exists in these cases to support the circuit court's referral of the entire cases to a special master. There appears to be no basis to support the circuit court's referral of the cases, including, among other things, motions to dismiss and determinations of liability, to a special master. Accordingly, we conclude that the circuit court exceeded its authority in referring the entire cases to a special master."

Ex parte Marshall, __ So. 3d at __.

As is seen from the above-quoted portion of Ex parte Marshall, the referral of a case to a special master under Rule 53(b) has specific requirements that must be considered by a court in so referring a case.

28

According to the Committee Comments on 1973 Adoption of Rule 53, Rule 53 is based on the federal version of the rule and, with certain exceptions not relevant here, "is identical to Federal Rule 53." In their treatise on federal practice and procedure, Charles Alan Wright and Arthur R. Miller state the following concerning the purpose of Rule 53:

> "In the federal courts, a master is appointed to help the district court only in a case in which particular assistance is needed. Thus, the appointment and activities of a master are only for the purpose of aiding the trial judge to obtain the facts and arrive at a correct result in a litigation pending before his or her court, particularly with regard to complicated matters. Because the use of masters is expensive and frequently leads to delay, reference to a master is justified only in very rare cases. The master is only to aid the trial judge in the performance of specific judicial duties as they may arise in a case. A master does not displace the court. However, a master appointed under Rule 53 may be considered an arm of the court in some contexts."

9C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2601 (3d ed. 2008 & 2023 Supp.) (footnotes omitted).

Having discussed Rule 53, we now turn to a brief discussion of § 19-3B-1001, which contains entirely different language from that used in Rule 53 and was passed by the legislature for different purposes. Section 19-3B-1001 states:

> "(a) A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust.

"(b) To remedy a breach of trust that has occurred or may occur, the court may:

"(1) compel the trustee to perform the trustee's duties;

"(2) enjoin the trustee from committing a breach of trust;

"(3) compel the trustee to redress a breach of trust by paying money, restoring property, or other means;

"(4) order a trustee to account;

"(5) appoint a special fiduciary to take possession of the trust property and administer the trust;

"(6) suspend the trustee;

"(7) remove the trustee as provided in Section 19-3B-706[, Ala. Code 1975];

"(8) reduce or deny compensation to the trustee;

"(9) subject to Section 19-3B-1012, [Ala. Code 1975,] void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds; or

"(10) order any other appropriate relief."

(Emphasis added.) As is apparent from the plain language of § 19-3B-1001, a circuit court has the authority, when a breach of trust has occurred or may occur, to "order a trustee to account" and to "appoint a special fiduciary to take possession of the trust property and administer the trust," among other things. The Uniform Comment to § 19-3B-1001 states, in pertinent part:

> "Subsection (b)(5) makes explicit the court's authority to appoint a special fiduciary, also sometimes referred to as a receiver. See Restatement (Second) Of Trusts § 199(d) (1959). The authority of the court to appoint a special fiduciary is not limited to actions alleging breach of trust but is available whenever the court, exercising its equitable jurisdiction, concludes that an appointment would promote administration of the trust. See Section 704(d) (special fiduciary may be appointed whenever court considers such appointment necessary for administration)."

Comment d. to Restatement (Second) of Trusts § 199 (Am. L. Inst. 1959), referenced in the Uniform Comment quoted above, provides the following commentary on the discretion a circuit court has to appoint a special fiduciary to administer a trust pending litigation concerning the removal of a trustee:

> "A [special fiduciary] will be appointed by the court to take possession of the subject matter of the trust or a part thereof and to administer the trust in respect thereto, if this is necessary for the protection of the interest of the beneficiary.

31

"If proceedings are brought for the removal of the trustee and it appears necessary or proper during the course of the proceedings that the trust should be administered under the supervision of the court, the court may appoint a [special fiduciary] until it is determined whether the trustee should be removed and a new trustee appointed.[1] The

---

[1]Although Alabama precedent is not very developed in this area of the law, the idea that a special fiduciary may be appointed before the circuit court's final determination that a breach of the trust has occurred is well established under the Uniform Trust Code, which Alabama has adopted. The Law of Trusts and Trustees states:

"Temporary removal may also prove useful. The court's power to suspend may be appropriate where an investigation of the grounds of removal takes considerable time and there is evidence indicating a danger of waste or misappropriation pending the proceedings.[3] Under these circumstances courts often appoint a receiver pendente lite to manage the trust affairs,[4] and in so doing necessarily suspend the trustee. The court's authority in equity to appoint a receiver does not depend on allegations of breach of trust, and can be appropriate whenever the court determines that a receiver is necessary for the proper administration of the trust.[6]

"The Uniform Trust Code codifies this equitable authority and provides for the appointment of a 'special fiduciary to take possession of the trust property and administer the trust. …'[7] The Uniform Trust Code also provides that a court can 'suspend the trustee.'[8]

"_____

"[3]The court has power to appoint a trustee ad litem for the conduct of litigation in which the trustees are engaged, and thus in effect remove them as to that matter when there is conflict between their personal and representative interests

32

in the litigation. <u>Selig v. Morrison</u>, 230 Ark. 216, 321 S.W.2d 769 (1959), citing text, §§ 529, 543.

"A court of equity may forbid a trustee to act under a trust, preliminary to the appointment of a successor. <u>Enochs v. Mississippi Tower Bldg.</u>, 210 Miss. 676, 50 So. 2d 551 (1951).

"Where litigation is pending regarding the appointment of a successor trustee, the court may appoint a trustee pendente lite to act until the litigation is concluded. <u>Bakewell v. Mercantile Trust Co.</u>, 319 S.W.2d 600 (Mo. 1958).

"Trial court's suspension of co-trustee upheld because the record showed that the co-trustee had aggressively pursued her own interests in the proceeds of the trusts and estate, to the apparent neglect of other designated beneficiaries, thus evincing a clear conflict of interest. <u>In re Eisenberg</u>, 93 A.D.3d 413, 939 N.Y.S.2d 407 (1st Dep't 2012).

"[4]<u>Wilmer v. Atlanta & R. Air-Line R. Co.</u>, C.C. Ga. 1874, 30 Fed. Cas. 73; <u>Janeway v. Green</u>, 1863, 16 Abb. Prac., N.Y., 215; <u>North Carolina R. Co. v. Wilson</u>, 81 N.C. 223 … (1879); <u>Cameron v. White</u>, 1927 OK 293, 128 Okla. 251, 262 P. 664 (1927); <u>Clay v. Selah Valley Irr. Co.</u>, 14 Wash. 543, 45 P. 141 (1896); <u>McCandless v. Warner</u>, 1885, 26 W. Va. 754; <u>Lamp v. Homestead Bldg. Ass'n</u>, 62 W. Va. 56, 57 S.E. 249 (1907).

"The appointment of a receiver is ancillary to an action or proceeding and there is no right to a receivership in an independent suit. <u>Associated Creditors' Agency v. Wong</u>, 216 Cal. App. 2d 61, 30 Cal. Rptr. 705 (1st Dist. 1963).

"And see <u>Jennings v. Fidelity & Columbia Trust Co.</u>, 240 Ky. 24, 41 S.W.2d 537 (1931) (appointing special receiver pending reorganization of trust company trustee).

"Such a receiver may be held to the duties of a trustee for the beneficiaries of the trust (and therefore be subject to suit for breach of duty) rather than being considered an officer of the court (and therefore immune from such suits). Alpert v. Gerstner, 232 S.W.3d 117 (Tex. App. Houston 1st Dist. 2006).

"In a suit by the residuary beneficiaries alleging mismanagement and seeking removal of the life tenant-trustee, the trial court did not abuse its discretion in appointing a temporary receiver to take charge of the trust property. There was evidence that the property would be lost, destroyed or materially injured unless a receiver were appointed, and that ultimate recovery by the applicants was probable. Pfeiffer v. Pfeiffer, 394 S.W.2d 679 (Tex. Civ. App. Houston 1965), writ dismissed, (Feb. 9, 1966).

"The incapacity of the sole trustee and danger to the trust assets may justify a court in appointing a receiver of the property of a business trust. Looney v. Doss, 189 S.W.2d 207 (Tex. Civ. App. Fort Worth 1945).

"….

"[6]See Restatement Second, Trusts § 199(d). The Comment to § 199(d) explains: 'The receivership will be terminated by the court when it is determined by the court that the trustee may properly continue as trustee, or when a new trustee is appointed and the title to the trust property is vested in him.'

"[7]Unif. Trust Code § 1001(b)(5). See also Unif. Trust Code 704(e) (providing that 'the court may appoint an additional trustee or special fiduciary whenever the court considers the appointment necessary for the administration of the trust.')[.]

"[8]Unif. Trust Code § 1001(b)(6). …"

34

[appointment of a special fiduciary] will be terminated by the court when it is determined by the court that the trustee may properly continue as trustee, or when a new trustee is appointed and the title to the trust property is vested in him."

As noted by this Court in Calhoun v. King, 5 Ala. 523, 525 (1843), one of the purposes for the appointment of a special fiduciary is to protect the assets of the trust: "It is an established rule of the court of chancery, that where a trust fund is in danger of being wasted or misapplied, it will interfere, on the application of those interested in the fund, and by the appointment of a receiver, or in some other mode, secure the fund from loss."

Based on the above discussion, it is apparent that an appointment of a special master under Rule 53 is distinct from the appointment of a special fiduciary under § 19-3B-1001. A special master serves as an aid to the circuit court to obtain facts necessary for the circuit court to reach a correct result in complex litigation before it. A special fiduciary, on the other hand, serves to protect the assets of a trust from mismanagement and waste by the trustee pending litigation concerning the trust, among

---

Susan N. Gary, George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 528 (3d ed. 2019) (one footnote omitted).

other things. Rule 53 and § 19-3B-1001 provide a circuit court with distinct tools that may be utilized under different circumstances.

Additionally, Marshall himself has argued in these proceedings that a special master appointed under Rule 53 is distinct from a special fiduciary appointed under § 19-3B-1001. In his reply brief filed in Ex parte Marshall, Marshall, in arguing against the idea that he was estopped from arguing that the circuit court had erred in referring the entirety of the cases to a special master because he had previously requested the appointment of a special fiduciary, expressly argued the following:

> "[Marshall] did not request a special master in prior pleadings. A special fiduciary was requested. The role of a special master differs from that of a special fiduciary. The parties without standing try to skirt the distinction by arguing that the special master 'is essentially such relief [Marshall] requested.' Answer, p. 25. But that is not true. [Marshall] did not request a special master and CPA be appointed, nor did [Marshall] request that the trial court abdicate its powers to the master and CPA. The fiduciary requested by [Marshall] is a temporary trustee of a trust -- with the duties that inhere in trustees -- not a Rule 53 special master who enjoys judicial immunities. And the trial court never appointed a special fiduciary; [Marshall] did not prevail on this point."

Marshall's reply brief in Ex parte Marshall at 11.

Having distinguished the appointment of a special master under Rule 53 from the appointment of a special fiduciary under § 19-3B-1001, we must now examine the August 8, 2024, order that the circuit court entered, which is set forth above, to determine if Marshall is correct in characterizing the entirety of the circuit court's order as one appointing a special master under Rule 53. The circuit court, citing § 19-3B-1001, appointed White as a special fiduciary and ordered that White "take possession of the property of the Trust, including its books and records, and administer the Trust until further order of the court." The circuit court had before it pleadings alleging that Regions Bank had breached the terms of the trust (Marshall, himself, alleged that Regions Bank had breached the terms of the trust in various respects) and documentary evidence indicating that Regions Bank had made distributions from the trust that are in violation of the terms of the trust.[2] Accordingly, the

---

[2]We note that Marshall makes the following argument that the circuit court based its judgment on allegations alone:

> "It is important to note also that the New Special Master Order is premised on allegations only. The New Special Master Order sets forth numerous 'findings of fact.' They are mere conclusory allegations, not facts. There have been no evidentiary hearings. The Court has taken no testimony. There is nothing more to say on the point, other than to iterate

circuit court determined that the appointment of a special fiduciary was necessary to protect the assets of the trust pending the litigation concerning the trust. Such an appointment is clearly one appointing a special fiduciary under § 19-3B-1001 for the purpose of protecting the assets of the trust from mismanagement; it is not, as Marshall alleges, a "warmed-over [Rule 53] special master order ...." Marshall's petition at 4. Therefore, as it relates to the appointment of White as a special fiduciary, we reject Marshall's premise that the circuit court's order is

---

that if allegations were facts courts could dispense with trials -- and witnesses for that matter -- and evidence too. Also, ordering the transfer of the assets of the trust based on allegations creates obvious due process problems that require a prompt remedy by the Court."

Marshall's petition at 13. Marshall's argument ignores the fact that the parties have presented documentary evidence to the circuit court and that the circuit court stated that it was taking judicial notice under Rule 201, Ala. R. Evid., of the tax records presented to it. The circuit court based its order appointing a special fiduciary on the tax records, which, according to the circuit court's order, demonstrates that some of the distributions made by Regions Bank violated the terms of the trust; Marshall does not dispute that aspect of the circuit court's order. Marshall also does not argue that the circuit court committed error in taking judicial notice of certain facts, and he cites no authority in support of his argument. Therefore, we need not consider Marshall's argument. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008)("Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived.").

one appointing a special master under Rule 53. Accordingly, Marshall's argument pertaining to the appointment of White as a special fiduciary under § 19-3B-1001 for the purpose of taking possession of the trust property and administering the trust fails; the circuit court had before it evidence indicating that Regions Bank had breached the terms of the trust, and the circuit court and did not exceed its discretion in appointing White as a special fiduciary to take possession of the trust property and administer the trust.[3]

---

[3]We note that we stated the following in Ex parte Marshall:

"In their respective answers filed with this Court, Carmack and Leigh and Lindsey argue that, even if it exceeded its discretion by referring all the matters in these cases to a special master under Rule 53, the circuit court had the authority to appoint a special master under § 19-3B-201, § 19-3B-706, and § 19-3B-1001, Ala. Code 1975. The text of those statutes does not mention a special master, but those statutes do give the circuit court authority to oversee the administration of a trust, which, presumably, includes the appointment of a special master. But there is nothing in those statutes indicating that the appointment of a special master may be done independent of Rule 53. Those statutes generally empower a circuit court to oversee the administration of a trust, which would include appointing a special master in appropriate cases, but Carmack, Leigh, and Lindsey have not cited any authority indicating that such an appointment need not comply with Rule 53. Their argument is not persuasive."

Moreover, as set forth above, Marshall himself requested earlier in these proceedings that a special fiduciary be appointed. The circuit court clearly had the discretion under § 19-3B-1001 to take such action, which Marshall requested. Marshall cannot now, after requesting that the circuit court appoint a special fiduciary, plausibly argue that the circuit court erred in doing that very thing. See Mobile Infirmary Med. Ctr. v. Hodgen, 884 So. 2d 801, 808 (Ala. 2003) ("The law is well settled that a party may not induce an error by the trial court and then attempt to win a reversal based on that error. 'A party may not predicate an argument for reversal on "invited error," that is, "error into which he has led or lulled the trial court."' Atkins v. Lee, 603 So. 2d 937, 945 (Ala. 1992)(quoting Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So. 2d 591, 595 (1971)). 'That doctrine [of invited error] provides

_____

__ So. 3d at __. As is evident from the above-quoted portion of Ex parte Marshall, Carmack, Leigh, and Lindsey argued that the circuit court had appointed a special master under § 19-3B-1001, they did not request this Court to consider the circuit court's order as one appointing a special fiduciary. As discussed extensively above, a special master is distinct from a special fiduciary under Alabama law. We did not have before us in Ex parte Marshall an argument that the circuit court had appointed a special fiduciary under § 19-3B-1001(b)(5), and, thus, nothing in that decision prohibits us from now determining that the circuit court did not exceed its discretion in appointing a special fiduciary.

that a party may not complain of error into which he has led the court.' Ex parte King, 643 So. 2d 1364, 1366 (Ala. 1993). 'A party cannot win a reversal on an error that party has invited the trial court to commit.' Neal v. Neal, 856 So. 2d 766, 784 (Ala. 2002). See also Liberty Nat'l Life Ins. Co. v. Beasley, 466 So. 2d 935, 937 (Ala. 1985); State Farm Mut. Auto. Ins. Co. v. Humphres, 293 Ala. 413, 418, 304 So. 2d 573, 577 (1974).").
Therefore, for this reason as well, Marshall has not demonstrated that he has a clear legal right to have set aside the circuit court's order appointing White as a special fiduciary to take possession of and administer the trust; that aspect of the circuit court's order must stand.

However, the circuit court also ordered that the special fiduciary conduct an accounting that detailed all the ways in which Regions Bank had breached the terms of the trust. The circuit court's order states:

> "17. The temporary Special Fiduciary is directed to audit the books and records of the Trust to determine the monetary amount, if any, of all disbursements made by the trustees, including both scholarships and other disbursements, that were in violation of the terms of the Trust. This accounting shall also include the amount of net income, if any, the trustees may have improperly diverted to the Trust's principal instead of using these funds to provide scholarships as required in accordance with Article 5 of the Trust. This accounting shall further include the amount of fees, if any, charged by the current administrative trustee, Regions Bank, that were not 'reasonable under the circumstances,' as

41

required by Ala. Code [1975, §] 19-3B-708(a). If the Special Fiduciary determines that there were trustee fees charged to the Trust that were not reasonable under the circumstances, he shall set forth the methodology he used to make that determination, and the amount considered unreasonable. The temporary Special Fiduciary shall also recommend to this court whether the breaches, if any, discovered by his accounting constitute a 'serious breach of trust' within the meaning of Ala. Code [1975, §] 19-3B-706(b)(1), making them of sufficient gravity to remove the trustees."

Of course, § 19-3B-1001(b)(4) gives the circuit court the discretion to order a trustee to give an account of a trust. The above-quoted portion of the circuit court's order, however, goes far beyond directing White to give a general accounting of the trust. The circuit court's order requires White to make factual findings and legal determinations, going so far as to task White, who is an accountant, to interpret § 19-3B-706(b)(1), Ala. Code 1975, and to determine if Regions Bank's conduct violated that statute. Section 19-3B-1001(b)(4) does not give a circuit court the authority to endow a special fiduciary with its judicial power to make factual findings and legal determinations. Marshall is correct in arguing that the circuit court exceeded its authority in that regard, and we direct the circuit court to vacate that portion of its order; § 19-3B-1001(b)(4) does not give the circuit court the discretion to cloak a special fiduciary with the authority to make the dispositive legal determinations in a case.

42

It is that aspect of the circuit court's order -- appointing White to make factual findings and dispositive legal determinations -- that may be, as Marshall argues, a "warmed-over [Rule 53] special master order …." Marshall's petition at 4. That is so because, although § 19-3B-1001 does not give the circuit court discretion to appoint White to aid it in obtaining the facts necessary to arrive at a correct result in the litigation pending before it, Rule 53 does. However, as we stated in Ex parte Marshall, a broad and unsubstantiated referral to a special master to make the dispositive legal determinations in a case, such as the circuit court has essentially done here, is an impermissible abdication of the circuit court's judicial function. In Ex parte Marshall, we stated:

> "In Ex parte Alabama State Personnel Board, [54 So. 3d 886 (Ala. 2010),] this Court, relying upon La Buy v. Howes Leather Co., 352 U.S. 249 (1957), as an analogous case, described a broad and unsubstantiated referral to a special master similar to the one in these cases, as follows:
>
> > "'In La Buy v. Howes Leather Co., 352 U.S. [249,] 256 [(1957)], the Supreme Court affirmed the appellate court's issuance of a writ of mandamus compelling the district court to vacate its order of reference of two complex antitrust cases to a special master for trial. The Court stated:
> >
> > > "'"[The trial judge] referred both suits to a master on the general issue.

43

Furthermore, neither the existence of the alleged conspiracy nor the question of liability vel non had been determined in either case. These issues, as well as the damages, if any, and the question concerning the issuance of an injunction, were likewise included in the references. Under all of the circumstances, we believe the Court of Appeals was justified in finding the orders of reference were an abuse of the petitioner's power under Rule 53(b)[, Fed. R. Civ. P.]. <u>They amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation</u>."'

"54 So. 3d at 896-97 (emphasis added). In the present cases, by referring to the special master all matters without satisfying the applicable standards for doing so, the circuit court abdicated its judicial function and, thus, exceeded its discretion."

__ So. 3d at __. The circuit court exceeded its discretion in ordering White to make all the factual findings and dispositive legal determinations necessary to decide these cases, which amounts to an impermissible abdication of the circuit court's judicial function.[4]

_____

[4]We note that Marshall also requested in his pleadings filed below that the circuit court order an accounting of the trust under § 19-3B-1001(b)(4). Nothing in this decision should be interpreted as foreclosing the circuit court from exercising its discretion to order an accounting of the trust, as requested by Marshall. However, as explained, we do not

44

Conclusion

In summary, Marshall has not demonstrated that the circuit court exceeded its discretion by appointing White as a special fiduciary and ordering him to take possession of the trust property and to administer the trust under § 19-3B-1001(b)(5); that decision was within the circuit court's discretion, and the circuit court exercised that discretion at Lindsey's and Marshall's request. Marshall has, however, demonstrated that the circuit court exceeded its discretion by abdicating its judicial function by ordering White to make all the factual findings and dispositive legal determinations in these cases; it appears that that aspect of the circuit court's order was an attempt to, once again, appoint a special master under Rule 53 and refer to him the dispositive legal issues of these cases. Therefore, we order the circuit court to vacate that aspect of its order.

---

interpret the circuit court's order as one ordering an accounting under § 19-3B-1001(b)(4), but, rather, as a referral of the entirety of the cases to a special master under Rule 53(b), and, thus, an abdication of the circuit court's judicial function. We stated in Ex parte Marshall that it did not appear that an accounting was necessary, but, once again, that was examining the issue through the lens of Rule 53. Marshall has not presented any argument discussing the authority of a circuit court to order an accounting under § 19-3B-1001(b)(4).

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Parker, C.J., and Shaw, Wise, Bryan, Mendheim, Stewart, and Mitchell, JJ., concur.

Sellers, J., concurs in part and dissents in part, with opinion.

Cook, J., recuses himself.

SELLERS, Justice (concurring in part and dissenting in part).

I concur in the main opinion's analysis and conclusion with respect to the Montgomery Circuit Court's jurisdiction over this action. I respectfully dissent as to the main opinion's conclusion that the trial court did not err in appointing a special fiduciary.

I agree with the main opinion's conclusion that a special master appointed under Rule 53, Ala. R. Civ. P., is distinct from a special fiduciary appointed under § 19-3B-1001(b)(5), Ala. Code 1975. Each position derives power and authority from a different source and requires that various predicates be established before appointment. I also agree that the trial court in the present case granted more authority to the special fiduciary than is allowed by statute and expanded the power of the special fiduciary to include responsibilities and actions that appear to be reserved for a special master or a court.

I dissent as to the conclusion that the trial court properly appointed a special fiduciary in the first place. The appointment of a special fiduciary under § 19-3B-1001(b)(5) is akin to the appointment of a receiver. See Uniform Comment to § 19-3B-1001 (noting that a special fiduciary is "also sometimes referred to as a receiver"). Appointing a

47

receiver is a drastic step that can cause protracted litigation and irreparable damage to the trust corpus and the beneficiaries of a trust. That step should not be taken simply as a matter of course. See generally Elliott v. Weatherman, 396 S.W.3d 224, 228 (Tex. App. 2013) (considering a Texas statute nearly identical to § 19-3B-1001(b)(5) and noting that "[t]he remedy of receivership … is an extraordinary remedy that must be cautiously applied" and that, "[e]ven if a specific statutory provision authorizes a receivership, a trial court should not appoint a receiver if another remedy exists at law or in equity that is adequate and complete"). Cf. Carter v. State ex rel. Bullock Cnty., 393 So. 2d 1368, 1371 (Ala. 1981) ("This extraordinary remedy [of appointing a receiver] … should not be granted unless there is a clear legal right to be protected, no other adequate remedy, and a showing that the complainants will otherwise sustain irreparable damage.").

Although § 19-3B-1001(b)(5) allows a court to appoint a special fiduciary to remedy a breach of trust that "may" occur, I do not view that as a blanket authorization to appoint a special fiduciary without at least providing the parties due process before making some specific findings, supported by sufficient evidence, of improper conduct that would justify

replacing a trustee with a special fiduciary, changing the location of the trust corpus, and altering the administration of the trust. The Uniform Comment to § 19-3B-1001 notes that a special fiduciary can be appointed if a court concludes "that an appointment <u>would promote administration of the trust</u>," thereby suggesting that there should have been some determination of why there has been, or likely will be, a breach of duties owed to the trust by the existing trustee in this matter. (Emphasis added.) <u>See</u> <u>also</u> § 19-3B-706(c), Ala. Code 1975 ("Pending a final decision on a request to remove a trustee, or in lieu of or in addition to removing a trustee, the court may order such appropriate relief under Section 19-3B-1001(b) <u>as may be necessary</u> to protect the trust property or the interests of the beneficiaries." (emphasis added)). A special fiduciary certainly should not be appointed based on one-sided allegations when there has been no real opportunity to challenge those allegations, which appears to be the case here. In my view, before appointing a special fiduciary, the trial court should hold a proper evidentiary hearing so that all parties may present relevant evidence and testimony, subject to cross-examination, on the issue whether duties owed to the trust have been, or likely will be, violated.

Although the respondents filed some of the trust's tax returns with the trial court, tax returns show calculations that are derived by subjective decisions that take into consideration any number of matters undisclosed by the returns themselves. And the opposing parties in this dispute have not been given a sufficient opportunity to submit their own evidence and explain at an evidentiary hearing the information contained in the tax returns and to provide context regarding how that information was used in reaching conclusions as reported on the returns. In short, the tax returns by themselves do not reveal sufficient raw data to justify appointing a special fiduciary. Only after holding a proper evidentiary hearing and making findings of fact, based on the evidence and testimony submitted during that hearing, that a breach of the trust has, or is likely to, occur should the extraordinary step of appointing a special fiduciary be taken. I respectfully dissent to the extent the main opinion concludes otherwise.